## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRAMAINE BROWN,** | : | **CIVIL NO. 1:22-cv-00404** |
| **Plaintiff** | : | |
| | : | **(Kane, J.)** |
| **v.** | : | |
| | : | |
| **UNITED STATES OF** | : | |
| **AMERICA, et al.,** | : | |
| **Defendants** | : | **Filed Electronically** |

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant United States of America respectfully submits this brief in support of its motion to dismiss. Tramaine Brown a pro se inmate incarcerated at the Federal Correctional Institution, Schuylkill (FCI Schuylkill). Am. Compl. (Doc. No. 6) at 2, 6, filed this Federal Tort Claims Act (FTCA) lawsuit against the United States and Ryan Miller seeking damages because he was exposed to the COVID-19 virus. (*Id.* at 1, 6.)

This Court lacks jurisdiction over Brown's claim pursuant to the Discretionary Function Exception (DFE) to the FTCA. Also, the Court should dismiss the Complaint because Brown fails to aver sufficient facts to state plausible claims of negligence and negligent infliction of emotional distress.

# I.   Procedural History

Brown initiated this action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the United States.   Doc. No. 1.   Thereafter, Brown filed an amended complaint adding Ryan Miller as a defendant.   Doc. No. 6.   The United States filed a Notice of Substitution of itself for Ryan Miller.   Doc. No. 18.   Brown filed another amended complaint, improperly and without permission.   Doc. No. 20. The United States moved to dismiss that amended complaint, Doc. No. 21, and now files this supporting brief.[1]

# III.   Factual Background

Brown contends that staff failed to follow CDC guidelines related to COVID, resulting in Brown, a high risk, obese, former smoker, being exposed to COVID-19 on March 2, 2021, and again on September 2, 2021. Am. Compl. (Doc. No. 20) at 8. Brown does not allege that he contracted COVID-19, merely that he was "exposed" to it multiple times, causing "loss of sleep, worriation, depression, anxiety," *Id.* at 9, and "headaches, severe mental pain . . . and extreme emotional distress," *Id.* at 10.

Brown asserts that the BOP violated their legal duty of care under 18 U.S.C. § 4042 to "provide suitable quarters, and provide for the safekeeping, care and

---

[1] Although the Second Amended Complaint was filed improperly, if this Court accepts it, this motion applies equally to the claims asserted therein, which have not changed from the Amended Complaint.

subsistence" of inmates by failing to follow national guidelines and failing to protect Brown from exposure to the Covid-19 virus. *Id.* at 7. Brown further alleges that staff knew of the dangers of COVID-19, but failed: (1) to do anything to prevent the spread of the virus; (2) destroyed records documenting staff with COVID-19 symptoms; (3) failed to follow national guidelines regarding prevention and testing; (4) staff continued to work despite exposure to COVID-19; and (5) failed to protect him from COVID-19 exposure. *Id.* at 7 -10.

### III. Questions Presented

A. Whether this Court lacks jurisdiction over the negligence claims due to the Discretionary Function Exception to the FTCA?

B. Whether the Court should dismiss the Complaint because Brown failed to plead sufficient facts to state a plausible negligence claim?

**Suggested Answers:** Affirmative.

### IV. Legal Standards

## A. Motion to Dismiss for Lack of Jurisdiction – Fed. R. Civ. P. 12(b)(1)

When ruling on a motion brought pursuant to Fed. R. Civ. P. 12(b)(1), a court may treat the motion as a factual challenge, which does not require a court to accept the allegations of a complaint as true. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The court may weigh any evidence to satisfy itself that it does or does

not have subject matter jurisdiction, but it cannot consider the merits of an action until it is satisfied that the dispute falls within the class of cases or controversies to which Article III, Section 2 of the United States Constitution has extended the judicial power of the United States. *See Steel Co. v. Citizens For a Better Env't*, 523 U.S. 83, 94-95, 102 (1998).

"When a motion under Rule 12 is based on more than one ground, the court should consider the [subject matter jurisdiction challenges] first, because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993).

**B.      Motion to Dismiss for Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating a complaint, although a court must accept factual allegations as true, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or asserts simply "an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Additionally, a court may disregard a complaint's legal assertions—"[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## V.    Argument

### A.    Brown's lawsuit is barred by the Discretionary Function Exception to the FTCA.

This Court should dismiss Brown's COVID claims because the discretion function exception (DFE) to the FTCA bars these claims, as the BOP has the discretion to make housing decisions at its institutions. Under DFE, the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a).

A two-part test determines the applicability of the DFE. *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). As applied by the Third Circuit:

> First, we ask whether the challenged conduct involved an "element of judgment or choice," which depends on whether there is a "federal

statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow." Second, if the act does involve judgment, we ask whether the judgment involved is "the kind that the discretionary function exception was designed to shield."

*Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018) (alteration in original) (citation omitted) (quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)).

Regarding the second prong,

assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the [DFE] was designed to shield. The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.

*Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (internal citation omitted) (quoting *United States v. Varig Airlines*, 467 U.S 797, 814 (1984)).

The Third Circuit, however, has held "[b]efore we can make the two-part *Gaubert* inquiry . . . we must identify the conduct at issue." *Merando*, 517 F.3d at 165. Brown describes only three particular behaviors by staff: providing unsuitable quarters, working after COVID-19 exposure, and destroying records of their COVID-19 symptoms. Am. Compl. (Doc. No. 6) at 6, 8.

Analyzing the first step of the *Gaubert* test, Brown "has pointed to no federal statute, regulation, or policy that was binding on [the] BOP or [FCI Schuylkill] officials" that they violated. *See Santiago v. United States*, No. 7:21-cv-436, 2022 WL

790805, at *2 (W.D. Va. Mar. 14, 2022).   At best, Brown's claims that staff did not "follow national guidelines," but he does not identify the guidelines or clarify if those guidelines: (1) prohibited the destruction of records, (2) mandated certain housing conditions, or (3) forbid all work after COVID-19 exposure.   Am. Compl. at 8 (Doc. No. 6))   Insofar as Brown's claims rest on violations of CDC recommendations, "CDC guidance was just that—guidance," and was not mandatory.   *See Santiago*, 2022 WL 790805, at *2.   Thus, the behavior of FCI Schuylkill staff undoubtedly "involve[d] an element of judgment or choice," satisfying the first step of the *Gaubert* test.   *See Berkovitz*, 486 U.S. at 536.

Applying the second step, "the development and implementation of safety protocols in federal prisons is unquestionably based on considerations of public policy."   *Santiago*, 2022 WL 790805, at *3.   FCI Schuylkill, like most federal prisons, do not have much space or resources, and therefore, "social distancing is not always possible.   *Id.*   Public policy requires that he BOP balance protecting inmates from COVID-19 and protecting "inmates from each other, to safeguard staff, and to protect the public." *Id.*

BOP decisions regarding measures to ensure staff and inmate safety from a global pandemic are not unlike housing decisions to ensure staff and inmate safety against violence.   Yet, the Third Circuit categorically held that BOP cellmate and housing assignments qualify for the DFE.   *See Rinaldi*, 904 F.3d at 273.   It reasoned

that, per step one of the *Gaubert* test, "housing and cellmate assignments unquestionably involve an 'element of judgment or choice,'" *id.* (quoting *Gaubert*, 499 U.S. at 322), and per step two, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981)).

So too with the actions of FCI Schuylkill staff regarding the COVID-19 pandemic. The DFE should apply, divesting the District Court of jurisdiction over Brown's complaint. *See Merando*, 517 F.3d at 175.

## B. Brown fails to state plausible claims of negligence or negligent infliction of emotional distress.

### 1. Elements of Brown's claims.

Brown's alleged claims against the United States under the FTCA: negligence and negligent infliction of emotional distress ("NIED") do not state claims upon which relief can be granted. Doc. 6 at 7 -8. The FTCA waives the United States' sovereign immunity by granting federal district courts jurisdiction over certain claims that are

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b) (alterations in original)). The United States is liable under the FTCA "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, the elements of an FTCA claim "must come from state tort law." *CNA v. United States*, 535 F.3d 132, 141 (3d Cir. 2008); *Molzof v. United States*, 502 U.S. 301, 305 (1992).

In Pennsylvania, there are four elements to a negligence claim: "(1) a duty or obligation recognized by the law . . . ; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).

Pennsylvania has four theories of liability for a NIED claim:

(1) impact liability where emotional distress is accompanied by physical injury or impact; (2) zone of danger liability where emotional distress is inflicted on a plaintiff who was in close proximity of physical impact and thereby reasonably experienced a fear of physical injury; (3) bystander liability for emotional distress experienced by a plaintiff who personally witnessed an impact upon a close relative; and (4) special relationship liability premised on the breach of a preexisting contractual or fiduciary relationship that foreseeably resulted in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress.

*Humphries v. Pa. State Univ.*, 492 F. Supp. 3d 393, 409 (M.D. Pa. 2020). Nonetheless, under all theories, a plaintiff "must establish a prima facie case of negligence." *Id.*

Thus, if Brown's negligence claim fails, his NIED claim fails *a fortiori*. *See Jordan v. Pennsylvania State Univ.*, 2022 WL 1447542, at *16 (Pa. Super. Ct. May 9, 2022) ("Given that Plaintiff has failed to establish a claim of negligence, Plaintiff's negligent infliction of emotional distress also fails.").

      2.      *Brown has not plausibly pled negligent breach of duty.*

Brown's complaint repeats broad, conclusory allegations: staff "failed to follow any of the basic recommendations of the CDC or otherwise take the necessary precautions to prevent the spread of the virus," (Doc. 6 at 5); staff "failed to take any precautionary measures to prevent or stop the spread of the virus," (*id.* at 6); Brown sustained injuries by "the negligent, wrongful acts and omissions of employees of the Government," (*id.* at 6); staff "failed to do anything to prevent the spread of [COVID-19] into the facility," (*id.* at 7); FCI Schuylkill and staff "breached [their] duty of care by . . . failing to provide suitable quarters . . . , failing to follow national guidelines in the prevention and testing for COVID-19, and by otherwise failing to adequately protect [Brown] from . . . dangerous prison conditions," (*id.* at 8); FCI Schuylkill and staff "failed to . . . follow national guidelines in the prevention and testing for COVID-19 . . . [and] protect [Brown] from the exposure to dangerous prison conditions, including the coronavirus," (*id.*)

These allegations fall short of stating a claim, constituting nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," *Iqbal*, 556 U.S. at

678, "labels and conclusions, and a formulaic recitation of the elements," *Twombly*, 550 U.S. at 555.   Under the three-step review of the sufficiency of the complaint, such allegations should be disregarded.   *See Schuchardt v. President of the United States*, 899 F.3d 336, 347 n.6 (3d Cir. 2016).

Brown makes just three slightly more specific allegations: staff 1) provided unsuitable quarters; 2) continued working despite exposure to COVID-19; and 3) destroyed records that documented their COVID-19 symptoms.   (Doc. 6 at 8.) Nevertheless, these allegations are also insufficient and "mere conclusory statements" at best.   *Iqbal*, 556 U.S. at 678.   "Factual allegations must be enough to raise a right to relief above the speculative level . . . ."   *Twombly*, 550 U.S. at 555.

Indeed, Brown's allegations are so speculative and vague as to be impossible to defend.   How were the living quarters unsuitable?   What could staff have feasibly changed to make housing safer?   Who continued working despite their exposure to COVID-19?   Who destroyed records?   When?   How did that impact the safety of the institution?   Simply stated, Brown provided no facts to "state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 663.

3.      *Brown has not plausibly pled causation.*

Assuming *arguendo* that FCI Schuylkill staff breached legal duties, "the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation."   *Lux v. Gerald E.*

*Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. 2005). To establish this causal link, "a plaintiff must produce sufficient facts to show that the defendant's negligence was both the cause-in-fact and the legal, or proximate cause of her injuries. In Pennsylvania, a negligent act is a cause-in-fact of the plaintiff's injuries 'if the harmful result would not have come about but for the negligent conduct.'" *Straw v. Fair*, 187 A.3d 966, 993 (Pa. 2018) (quoting *First v. Zem Temple*, 686 A.2d 18, 21 n.2 (Pa. Super. Ct. 1996)).

Brown does not provide the necessary facts to plausibly show that the BOP caused his exposure to COVID-19. Nor does he point to the actions that led to his exposure, aside from a medley of vague allegations, unaccompanied by dates or times.

Brown's most detailed allegations are that staff provided unsuitable quarters, continued working after COVID19 exposure, and destroyed records of their COVID-19 symptoms. (Doc. 6 at 6, 8.) The crucial causal links are missing. What deficiencies at FCI Schuylkill caused the exposure? How did staffs' continued work expose COVID-19 to Brown? How did record destruction lead to Brown's exposure to COVID-19? How can such "exposure" be demonstrated when Brown fails to allege that he even contracted COVID-19? Again, Brown even fails to name the negligent staff members, rendering any specific factual dispute impossible.

In *Davis v. Rodman*, 227 S.W. 612, 613 (Ark. 1921), the plaintiffs' complaint had alleged that their physicians negligently caused the spread of typhoid fever to the

12

plaintiffs and their family members. The *Rodman* Court recognized that "[i]t [wa]s undoubtedly the duty of physicians who are attending patients afflicted with contagious or infectious diseases, not to negligently do any act that would tend to spread the infections." *Id.* at 614. Nevertheless, the *Rodman* Court affirmed the lower court's dismissal of the action because the plaintiffs failed to plead "[s]pecific acts and facts showing how and why the alleged negligence of [the defendants] was the proximate cause of the [plaintiffs' infections]." *Id.*

Brown's complaint is even less specific than the allegations in *Rodman*. At best, his allegations suggest it is *possible* he was exposed to COVID-19 through staff negligence, which is insufficient. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting *Twombly*, 550 U.S. at 556)). Moreover, it is also possible that Brown was exposed to COVID-19 innocently, during times when staff were diligent in following mitigation protocols. *Cf. Royster v. United States*, 475 Fed. App'x 417, 421 (3d Cir. 2012) ("[B]acteria, [like viruses], . . . are apt to spread, even potentially in the face of disease prevention efforts of the highest quality, and the mere contraction of an infection would not, on its own, put Royster on notice that some act or omission by prison officials was the cause."); *Rodman*, 227 S.W. at 614 (stating the complaint failed to allege how the plaintiffs "and their children would have escaped typhoid

fever" even if the defendant physicians had followed a board of health rule that they were alleged to have violated).

Further, it is also possible that any one of Brown's fellow inmates innocently or negligently caught and transmitted COVID-19 to him. *Rodman*, 227 S.W. at 615 (finding negligent spread of disease allegations insufficient to state a cause of action where "the source of infection . . . [wa]s not definitely traced to any act of negligence of [the defendant physicians]"); *cf. Davis v. Cruise Operator, Inc.*, No. 16-cv-62391, 2017 WL 3057610, at *6 (S.D. Fla. July 19, 2017) (granting summary judgment against claims that a cruise ship's negligence exposed the plaintiff to norovirus because she provided nothing "linking [her] gastrointestinal illness to her consumption of food on board the [ship] as opposed to another possible source" or "connecting the timing of [her] food or beverage consumption . . . to the onset of her symptoms").

Of course, these alternatives are sheer speculation. Nevertheless, they demonstrate that Brown's contention that BOP officials negligently exposed him to COVID-19 is no less speculative, and speculation is not sufficient to state a claim. *See Malles v. Lehigh Cnty.*, 639 F. Supp. 2d 566, 581 (E.D. Pa. 2009) ("[B]ecause Malles has presented no evidence of causation, we will dismiss [his] § 1983 claim with regard to the conditions of the prison and defendants' alleged failure to protect him from becoming infected with MRSA."); *see also Twombly*, 550 U.S. at 545 (stating that a complaint's allegations must "raise a right to relief above the speculative level").

Accordingly, the Court should dismiss Brown's FTCA claims for failing to plead the essential element of causation.

**C.     Brown does not plausibly plead assault and battery or Intentional Infliction of Emotional Distress (IIED).**

> 1.     *Miller could not have acted tortiously in his alleged supervisory role.*

Brown's assault and battery and IIED claims are predicated on the actions of Miller.   Insofar as Brown's claims against Miller rest upon Miller's alleged direction of subordinate staff, *see* Doc. 6 at 11, the claims fail.   Brown does not plead what supervisory relationship Miller, as an executive assistant, shared with correctional staff at FCI Schuylkill.   Could Miller unilaterally direct inmates into quarantine?   Did he have authority to designate COVID policies at FCI Schuylkill, specifically those allegedly in derogation of BOP national policies?

Even if the appropriate supervisory relationship were appropriately pled, the claims still fail as far as they rest on that relationship.   In Pennsylvania, "an employer [has] the duty to exercise reasonable care in selecting, supervising[,] and controlling employees." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000) (quoting *R.A. v. First Church of Christ*, 748 A.2d 692 (Pa. Super. Ct. 2000)). Employer liability "exists only if all the requirements of an action of tort for negligence exist." *Brezenski*, 755 A.2d at 42 (quoting Restatement (Second) of Agency § 213 cmt. a (Am. L. Inst. 1958)).

As discussed *supra*, Brown has failed to properly allege any negligent torts by staff at FCI Schuylkill. This forecloses any claim based on Miller's alleged supervisory direction *a fortiori*.

> ### 2. *Brown's complaint does not plausibly plead elements of assault and battery.*

Irrespective of Miller's supervisory role, Brown's complaint fundamentally fails to plausibly allege facts matching the elements of assault and battery.

> The tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive *bodily contact* and that the plaintiff actually experience such apprehension. Battery requires proof that the defendant acted with the intent to cause harmful or offensive *bodily contact* with the person of the plaintiff and that such contact actually followed.

*Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 557 (M.D. Pa. 2008) (emphases added), *aff'd*, 350 F. App'x 770 (3d Cir. 2009); *see also Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) ("Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." (quoting *Cohen v. Lit Brothers*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

Brown's assault and battery claim alleges that Miller "forced [Brown] to remain [at FCI Schuylkill's prison] for more than [45] days to quarantine when [Miller] knew [Brown] was at risk." (Doc. 6 at 9.) Yet Brown fails to allege that Miller touched him in any way. This is a fatal deficiency to the assault and battery claims. *See Cooper*

*v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012) ("[B]attery has been described as an unconsented *touching* that is either harmful or offensive." (emphasis added)).   Even supposing *arguendo* that Brown is implying he was assaulted and battered while being transferred into quarantine at the prison, Brown does not allege *who* escorted him during the transport.

       3.    *Brown's complaint does not plausibly plead the elements of IIED.*

Brown's IIED claim does not fare any better.

> While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for [IIED], *see Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000), the Pennsylvania Superior Court has recognized the cause of action and has held that, "in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."   *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).

*Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (citations edited).

      Therefore, assuming *arguendo* that Pennsylvania IIED claims are valid, they have four elements: "(1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant emotional distress was severe."   *Mills*, 589 F. Supp. 2d at 558.

      Brown's IIED claim is hinged on Miller's allegedly 1) directing staff to destroy records of COVID-19 infections and to disregard CDC guidelines and 2) forcing

Brown into quarantine at the prison "with the specific intent of exposing [Brown] to" COVID-19. (Doc. 6 at 11.) But Brown's IIED claim is, yet again, bereft of facial plausibility. How did Miller direct staff to destroy records? When? Which staff? Which CDC guidelines did Miller direct staff to disregard? How did this expose Brown to COVID-19? How did Miller "force" Brown into quarantine at the prison? How was Brown any less apt to face COVID-19 exposure at the camp versus the prison? Brown's allegation that Miller intended that Brown's quarantine would expose Brown to COVID-19 is particularly barren. Brown provides *no facts* to even reasonably *infer* such intent, just a conclusory statement. *Cf. Twombly*, 550 U.S. 544, 556 (2007) ("parallel conduct and a bare assertion of conspiracy will not suffice").

Even looking past these glaring deficiencies, Miller's alleged conduct simply does not rise to the level of "outrageousness" necessary to sustain an IIED claim. "Extreme and outrageous" conduct represents an exceptionally high bar.

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)).

> Conduct that Pennsylvania courts have deemed sufficiently outrageous . . . includes: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease.

*Mills*, 589 F. Supp. 2d at 558 (citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

Brown's allegations against Miller are not comparable to the few qualifying IIED cases in Pennsylvania. Miller allegedly 1) directed the destruction of COVID-19 records; 2) directed staff to disregard unspecified CDC guidelines; and 3) forced Brown into quarantine during a pandemic. As pled, these allegations are not tortious or criminal, let alone "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Kazatsky*, 527 A.2d at 991. Accordingly, Brown's IIED claim should be dismissed.

## VI.    Conclusion

In light of the aforementioned, the Court should dismiss the Complaint for lack of jurisdiction and/or because Brown failed to allege plausible claims of negligence and negligent infliction of emotional distress.

Respectfully submitted,

Gerard M. Karam
United States Attorney

/s/Michael Butler
Michael Butler
Assistant United States Attorney
PA 81799
Maureen A. Yeager
Paralegal Specialist
235 N. Washington Ave., Ste. 311
P.O. Box 309
Scranton, PA    18503
Tel: (717)221-4482
Fax: (717)221-4493
Date: September 7, 2022                    Michael.J.Butler@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRAMAINE BROWN,        :      **CIVIL NO. 1:22-cv-00404**
     Plaintiff           :
                       :      **(Kane, J.)**
     v.                :
                       :
**UNITED STATES OF**     :
**AMERICA, et al.,**      :
     Defendants     :      **Filed Electronically**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.   That on September 7, 2022, she served a copy of the attached

## BRIEF IN SUPPORT OF MOTION TO DISMISS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and its contents in the United States Mail at Scranton, Pennsylvania.

ADDRESSEE:

Tramaine Brown
Reg. No. 91240-053
FCI Schuylkill-Satellite Camp
Federal Correctional Institution
P.O. Box 670
Minersville, PA 17954

                           /s/Maureen A. Yeager
                           Maureen A. Yeager
                           Paralegal Specialist