UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAMAINE BROWN | ) |
| Plaintiff, | ) |
| Vs. | ) NO. 1:22-cv-00404-YK |
| UNITED STATES OF AMERICA | ) |
| Defendant. | ) |

FILED
SCRANTON
SEP 26 2022
PER _____
DEPUTY CLERK

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Tramaine Brown, appearing *pro se*, submits this Memorandum of Law in Support of his Opposition to the Government's Motion to Dismiss, and says:

## INTRODUCTION

On March 17, 2022, Plaintiff brought this action invoking the jurisdiction of the Court pursuant to the Federal Tort Claims Act ("FTCA") alleging claims of negligence and negligent infliction of emotional distress against the Defendant. (Doc. No. 1). On April 15, 2022, Plaintiff filed a First Amended Complaint, naming Defendant Ryan Miller ("Miller") as a Defendant, invoking the Court's diversity jurisdiction and asserting state law claims of Assault/Battery and Intentional Infliction of Emotional Distress. (Doc. No. 6). On August 22, 2022, before either Defendant filed any responsive pleading, Plaintiff filed a Second Amended Complaint, pleading an Eighth Amendment Civil Rights claim against Defendant Miller. (Doc. No. 20).[1]

---

[1] On August 9, 2022, Defendant United States of America filed a Notice of Substitution purporting to substitute itself for Defendant Miller (Doc. No. 18). On August 19, 2022, Plaintiff objected and moved to strike and gave notice of his intentions to further amend the complaint to assert constitutional claims against Defendant, Miller (Doc. No. 19). Thus, Plaintiff's motion should also be properly construed as a Motion for Leave to Amend under Rule 15(a) of the Fed. R. Civ. P. This Motion remains pending.

On August 26, 2022, Defendant United States moved the Court to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) and asserted that a brief in support of its motion would be filed in accordance with M.D. Pa. Local Rule 7.5 (Doc. No. 21). On September 7, 2022, the Defendant filed a brief in support of its motion arguing that the Court should dismiss the Plaintiff's suit for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because the lawsuit is somehow barred by the Discretionary Function Exception ("DFE") to the FTCA, or, pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim because Plaintiff has allegedly failed to plead claims of negligence and causation and for this reason, his negligent infliction of emotional distress ("NIED") claim fails, and that the Plaintiff has allegedly failed to sufficiently plead assault and battery or intentional infliction of emotional distress ("IIED"). (Doc. No. 18).

As will be discussed more fully below, the Defendant's motion is wholly without merit, and should be summarily denied.

## ARGUMENT IN OPPOSITION

**A.   Discretionary Function Exception to the FTCA Does Not Apply since the acts Giving Rise to the Injury Did Not Involve an Element of Judgment or Choice.**

In moving to dismiss, in its Brief in support of its motion to dismiss filed in this action on September 7, 2022, Defendant United States first incorrectly argues that this Court lacks jurisdiction over the Plaintiff's claims in this action pursuant to the DFE of the FTCA because the "BOP has the discretion to make housing decisions at its institutions." (Doc. No. 22, at 5-8). Defendant's argument is meritless in that it mischaracterizes the Plaintiff's claims.

The government bears the burden of proving the applicability of the discretionary function exception. *Cestonaro v. United States,* 211 F.3d 749, 756 n. 5 (3rd Cir. 2000). As a general matter, it is the plaintiff's burden in a factual 12(b)(1) challenge to prove that subject matter jurisdiction exists. *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3rd Cir.1977).

2

The Third Circuit; however, has not discussed the relationship of the plaintiff's burden under Rule 12(b)(1) and the government's burden to prove the applicability of the discretionary function exception. Other circuit courts that have held that it is the government's burden to prove that the exception applies, have found that the government's burden arises if plaintiff pleads matters that are facially outside of the FTCA's exceptions. *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir.1992), *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir.1952). The Third Circuit adopted this approach in *Cestonaro.*

In this instance, Brown has met his burden of pleading matters facially outside of the FTCA's exceptions. Therefore, the burden shifts to the government to prove the applicability of the discretionary function exception in this instance; however, it has failed to do so. Plaintiff's claims plainly do not arise out of the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government; nor do they arise out of the BOP's "discretion to make housing decisions at its institutions" as the Defendant has mischaracterized the Plaintiff's claims; rather, his claims arises out of the negligent, wrongful acts and omissions of employees at the SCP Schuylkill in breach of their legal duty to, inter alia, protect the Plaintiff from the *exposure to dangerous prison conditions* including the coronavirus. (Doc. No. 20, Compl. at 7-10). It strains credulity to suggest that employees at the SCP Schuylkill were exercising or performing a discretionary function or duty to prevent the spread of a contagious disease such as COVID-19 into a prison facility to protect the Plaintiff from exposure to such dangerous prison conditions.

Moreover, to the extent that the BOP COVID-19 Pandemic Response Plan is relevant to the analysis, which the Government conveniently failed to address at all in its Motion; however, it was plainly a policy that was specifically designed to prescribe the course of action for all BOP

employees to follow to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities but employees at SCP Schuylkill failed to follow it. Thus, the discretionary function exception does not apply because the employees had no choice but to follow the directive. *Bistrian v. Levi,* No. CV 08-3010, 2020 WL 6951048, at *26 (E.D. Pa. Aug. 21, 2020).

The United States enjoys sovereign immunity from suit, except where that immunity is expressly waived. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Under the FTCA, the United States has waived sovereign immunity for claims related to injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. ..." 28 U.S.C. §1346(b)(1). Thus, the FTCA makes the United States liable for tortious acts or omissions committed by its agents "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b). Accordingly, a plaintiff suing the United States under the FTCA must state a claim under Pennsylvania law, or otherwise point to a state-law analogue to support a claim against the government. *See Cecile Industries, Inc. v. United States*, 793 F.2d 97, 99 (3rd Cir. 1986). For this reason, courts have found that where a plaintiff's claim of negligence is predicated solely on the failure of the United States to comply with a federal statute or regulation, the FTCA will often be found inapplicable. *Id.*; *see also Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 536 (1st Cir. 1997) ("It is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the failure of the United States to carry out a federal statutory duty in the conduct of its own affairs.") (Internal citations omitted); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001) ("To bring suit under the FTCA based on negligence *per se*, a duty must be identified, and this duty cannot spring from federal law.").

4

Under the Pennsylvania doctrine of negligence *per se*:

> a violation of a statute may be grounds for finding that defendant is *per se* liable. To assert a claim for negligence *per se*, the plaintiffs must demonstrate that: 1) the statute or regulation clearly applies to the conduct of the defendant; 2) the defendant violated the statute or regulation; 3) the violation of the statute proximately caused the plaintiff's injuries; and 4) the statute's purpose is, at least in part, to protect the interest of the plaintiff individually, as opposed to the public.

*Mest v. Cabot Corp.*, 449 F.3d 502, 518 (3rd Cir. 2006) (citing *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. Ct. 1996)). *See also Cecile Industries, Inc.*, 793 F.2d at 99 (FTCA case) ("The failure to follow a federal regulation may be negligence *per se* 'if, under state law criteria, it may be considered the kind of ... regulation of which is negligence *per se*.'") (quoting *Schindler v. United States*, 661 F.2d 552, 560-61 (6th Cir. 1981).

In *Cecile Industries*, plaintiffs, a manufacturer of clothing and equipment for the United States government, and the company's president and sole shareholder, brought suit alleging negligence *per se* under the FTCA. 793 F.2d at 98. Specifically, the plaintiffs argued that the Defense Personnel Support Center, an agency of the Department of Defense, caused them to be *de facto* debarred from bidding on government contracts without notice and without opportunity to present evidence. *Id*. The government moved to dismiss for lack of subject-matter jurisdiction, arguing that because *de facto* debarment was not a tort recognized by Pennsylvania common law, it was not cognizable under the FTCA. *Id*. The Third Circuit agreed, finding that:

> "[e]ven if the regulations requiring notice and an opportunity to present evidence were not followed in the period before debarment proceedings were instituted, plaintiffs have not shown that the failure to follow such procedures constitutes negligence under Pennsylvania law. The only state law tort that might arguably have been violated, misrepresentation, is explicitly excepted from the grant of jurisdiction by the Federal Tort Claims Act. The government has not waived its sovereign immunity in that respect."

*Id*. at 100 (internal citation omitted).

However, unlike the foregoing cases, in the instant case the Plaintiff is not bringing a claim for negligence *per se*. Instead, the plaintiff has brought a claim for general negligence against the United States under a common law tort theory, based upon his allegation that employees of the Defendant were negligent in failing to provide suitable quarters and provide for the safekeeping, and care of the Plaintiff, including, failing to adequately protect the Plaintiff from the exposure to dangerous prison conditions including the coronavirus. Although it is true that the plaintiff has observed that under BOP policies, employees were required at all of the BOP facilities, including SCP Schuylkill, to enforce and strictly follow the CDC guidelines to prevent the spread of the virus into the facility, the plaintiff has not contended that the employees' alleged failure to adhere to the BOP policies constitutes negligence *per se*. It is clear that Plaintiff, along with many others, were unnecessarily put at risk of serious injury or death because either the employees did not take reasonable safety precautions or because certain inmates who could have been released were not.

In construing claims brought under the FTCA, "'[i]t is the substance of the claim and not the language used in stating it which controls." *Maynard v. United States*, No. 3:CV-06-2331, 2008 WL 4453199, at *5 (M.D. Pa. Sept. 30, 2008) (quoting *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1264-1265 (11th Cir. 2000)).

Here, the plaintiff's claim is that the employees, in derogation of a federal prison policy, negligently failed to follow the BOP COVID-19 Pandemic Response Plan that prescribed the course of action for all BOP employees to follow to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities. (*Id*. at. 7-10). Plaintiff further claims that this negligence permitted the virus to rapidly spread into the facility, which resulted in the Plaintiff ultimately be exposed to the coronavirus multiple times and sustaining personal injuries. *Id*.

Plainly these allegations do not constitute a narrow claim of negligence *per se*, but rather a claim for negligence supported as an evidentiary matter by allegations that employees at SCP Schuylkill failed to adhere to mandatory prison policies governing the safety protocols in the prevention of the spread of a contagious disease such as COVID-19. For this reason, the Plaintiff's claims are not negligence *per se* claims which must be dismissed because for the inapposite reason that there is no Pennsylvania law strictly analogous to the BOP policy in question. Moreover, prison officials have an affirmative duty to protect inmates from infectious disease such as the coronavirus. *Jolly v. Coughlin*, 76 F.3d 468 (2nd Cir. 1996). Defendant's duty to exercise care for the safety of its prisoners is affirmatively established by 18 U.S.C. §4042. *United States v. Muniz*, 374 U.S. 150, 164-165 (1963). Indeed, the Third Circuit Court of Appeals has even allowed prisoners a cause of action for mental anguish suffered as a result of exposure to infectious diseases such as the coronavirus. *Plummer v. United States*, 580 F.2d 72 (3rd Cir. 1978). Simply put, Plaintiff's claims here are brought under a common law tort theory and the Defendant has failed to meet its burden of proof in establishing that the alleged negligent conduct falls within the DFE of the FTCA. Defendant's assertion that "the BOP has the discretion to make housing decisions at its institutions", is simply a mischaracterization of the Plaintiff's claims. Accordingly, Second Amended Complaint survives dismissal for lack of jurisdiction.

### B. **Brown has plead sufficient facts to state a plausible negligence claim.**

Defendant has alternatively moved to dismiss the Plaintiff's claims in this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Brown has allegedly not pled negligent breach of duty and causation sufficient to state a negligence claim, and that for this reason, his NIED claim also fails. (Doc. No. 22, at 8-11). This argument is plainly without merit.

First, to dismiss a claim under Rule 12(b)(6) for failure to state a claim, the Court must make a threshold determination that it has jurisdiction because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits. *S. Walk at Broadlands Homeowners' Ass'n v. Open Band at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013). In *Steel Co. v. Citizens for a Better Environment,* the Supreme Court has held "that Article III jurisdiction is always an antecedent question" to be answered prior to any merit's inquiry. 523 U.S. 83, 101 (1998). Indeed, the Court emphasized that in order to dismiss a claim for failure "to state a cause of action" a court must have "*power* to adjudicate the case." *Id.* at 89. Therefore, such a dismissal cannot be issued "before resolving a dispute" concerning jurisdiction. *Id.* at 92. And any action by a court without subject-matter jurisdiction is "ultra vires" and therefore, is "void". *See, Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999). Thus, because the Defendant has raised a challenge to the Court's jurisdiction, that disputed issue must first be resolved before reaching the merits of the Defendant's argument that Brown has allegedly failed to plead sufficient facts to state a plausible negligence claim. As explained more fully above though, the Court does have jurisdiction because the DFE to the FTCA does not apply to any of the facts in this case as none of the claims asserted in this case are based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government but rather, a breach of an affirmative duty to protect the Plaintiff from an infectious disease.

In the event the Court finds that the DFE to the FCTA apply (which it plainly does not), then the Court should dismiss the Plaintiff's claims against the Government without prejudice for lack of subject matter jurisdiction, rather than on the merits. *N.J. Physicians, Inc. v. President of United States*, 653 F.3d 234, 241 n.8 (3rd Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice").

*The Law*

*The 12(b)(6) Standard*

In deciding a motion to dismiss under FED.R.CIV.P. 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3rd Cir. 1998); *Robb v. Philadelphia*, 733 F.2d 286, 290 (3rd Cir. 1984). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3rd Cir. 1982).

*The Four Corners Doctrine*

FED.R.CIV.P. 12(b) specifically circumscribes material that a court may consider in a motion to dismiss by stating, in pertinent part: " [I]f, on a motion asserting the defense number (6) to dismiss, . . .matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment . . ." As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997). There are two exceptions to the general rule, however. Documents which are integral to the complaint and documents of which a court may take judicial notice. Accordingly, Defendant's Rule 12(b)(6) motion must be confined to the four corners of the complaint.

As noted above, the FTCA offers a limited waiver of the federal government's sovereign immunity as to negligent acts of government employees acting within the scope of their employment. 28 U.S.C. §2671, *et seq*. Thus, in certain circumstances, prisoners may invoke the FTCA to seek damages for injuries received while in confinement. *Muniz*, 374 U.S. at 153.

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.... 28 U.S.C. §2675(a).

Brown's compliance with the exhaustion requirement of the FTCA administrative procedure is not in dispute. Rather, the Defendant incorrectly argues that Brown has not plead sufficient facts to state a plausible negligence claim. (Doc. No. 22, at 8-14). In passing the FTCA, Congress waived the government's sovereign immunity for negligent torts committed by employees of the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1); *see also* 28 U.S.C. §2674 (providing that, for tort claims, the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render Defendant liable in tort as a private individual would be under like circumstances.'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))).

As this provision makes clear, in conjunction with the jurisdictional grant over FTCA cases in 28 U.S.C. §1346(b), the extent of the United States' liability is generally determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992). Under Pennsylvania law, "To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (Pa. 1998). With regard to the first element, the BOP, under the direction of the Attorney General, has a broad statutory duty to, among other things, "provide suitable quarters and provide for the safekeeping, care ... [and] protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. §§4042(a)(2)-(3). Although "[t]he Government is not an insurer of the safety of a prisoner," *Jones v. United States*, 534 F.2d 53, 54 (5th Cir.1976), however, prison officials have a duty of "ordinary diligence to keep prisoners safe from harm," *Hossic v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987) (noting that 18 U.S.C. §4042 (1979) establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA); *Nickens v. United States*, 2006 WL 277013, *5 (M.D. Pa. 2006) (same); *Belcher v. United States*, No. 4:03-CV-1252, 2007 WL 2155696, at *3 (M.D. Pa. July 25, 2007) (quoting *Hossic*, 682 F. Supp. at 25 (same). As to whether the BOP breached that duty, Brown must allege the manner in which prison officials "deviated from the general standard of care expected under the circumstances." *Martin*, 711 A.2d at 461. In other words, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury." *Macias v. United States*, No. 05-1445, 2006 WL 1843111, at *2 (D.N.J. June 30, 2006) (citations omitted); *Hossic*, 682 F. Supp. at 25 (same).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" *See, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Here, the four corners of the Second Amended Complaint plainly give the defendants fair notice of what the claim is and the grounds upon which it rests in that it alleges and establishes that employees of SCP Schuylkill were aware of the dangers of the coronavirus that it posed to Brown, and others at SCP Schuylkill, but failed to protect him, and had reason to anticipate that he was in danger and failed to act. Moreover, prisons have a duty to adopt reasonable measures to avoid unnecessary health hazards. Brown also alleges that employees at SCP Schuylkill failed to follow the mandatory BOP COVID-19 Pandemic Response Plan that prescribed the course of action for all BOP employees to follow to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities. Thus, under Pennsylvania law, Brown has adequately plead a tort cause of action in negligence as he has sufficiently alleged that the defendant owed a duty of care to him, defendant breached that duty, the breach resulted in injury to him, and he has suffered an actual loss or damage as a direct result.

Moreover, in the initial screening of his complaint under 28 U.S.C. §1915, the Court apparently satisfied itself *before* ordering the Defendant to respond that it contained sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Nothing more is required to survive the Rule 12(b)(6) dismissal of the negligence claim as the facts alleged in the complaint are plainly enough to raise a right to relief above the speculative level. Plaintiff's negligent infliction of emotional distress claim, likewise, survives dismissal under the theory that Defendant created a zone of physical danger by, inter alia,

negligently exposing him to dangerous prison conditions including the coronavirus in breach of its duty and obligation to exercise care for his safety to keep him safe from harm. For these reasons, Defendant's argument that Brown has allegedly not adequately pled negligent breach of duty and causation is unavailing and should therefore be rejected.

### C. Brown has adequately plead assault and battery and Intentional Infliction of Emotional Distress (IIED) against Defendant Miller.

Finally, the Government argues that (1) Brown has allegedly failed to plead what supervisory relationship Miller, as a Camp Administrator, shared with correctional staff at the SCP Schuylkill Satellite Camp; (2) Brown has failed to properly allege any negligent torts by staff at SCP Schuylkill Satellite Camp; (3) Brown fails to allege facts matching the elements of assault and battery; (4) Defendant Miller's conduct does not rise to the level of "outrageousness" necessary to sustain an IIED claim. Doc. No. 22, at 15-19. These arguments are meritless.

First, a fair reading of the complaint show that Defendant Miller shared a supervisory relationship with correctional staff at the SCP Schuylkill Satellite Camp, as Camp Administrator, and defendant offers nothing to refute those facts. The questions of whether Defendant Miller could "unilaterally direct inmates into quarantine" or "have authority to designate COVID policies at FCI Schuylkill", specifically those alleged in derogation of BOP national policies, are plainly questions that can only be resolved through discovery and are plainly not properly decided on a Rule 12(b)(6) motion as the Defendant argues here. (*Id*. at 15). Moreover, as discussed above, Brown has clearly alleged negligent torts by staff at SCP Schuylkill Satellite Camp in that he alleges in the Complaint that employees of SCP Schuylkill were fully aware of the dangers of the coronavirus that it posed to him, but failed to protect him, or any of the other "fellow inmates", and had reason to anticipate that Brown and others were in danger and failed to act.

Moreover, and as noted above, prisons have a duty to adopt reasonable measures to avoid unnecessary health hazards, and in that respect, Brown has plainly alleged that employees at SCP Schuylkill failed to follow the mandatory BOP COVID-19 Pandemic Response Plan that prescribed the course of action for all BOP employees to follow to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities. Thus, Brown has properly alleged negligent torts by staff at SCP Schuylkill Satellite Camp.

With regard to the Plaintiff's assault and battery claims asserted against Defendant Miller, Brown has also properly alleged facts matching the elements of assault and battery. The Defendant argues that Brown's assault and battery claim fails to allege that Defendant Miller touched him in any way and that this is a "fatal deficiency to the assault and battery claims." *Id.* at 16. This argument fails. In his complaint, it plainly alleges that "Despite the fact that the main FCI Schuylkill institution was the epic-center of the coronavirus, Defendant, Miller forced the Plaintiff to remain there for more than forty-five days to quarantine when the defendant knew that the Plaintiff was at risk", …, and "while the Plaintiff was housed at the epic-center of the virus, he was exposed to the coronavirus." (Doc. 6 at 9.).

By forcing the Plaintiff into a place known to be dangerous, there can be no question that defendant Miller assaulted the Plaintiff. Furthermore, the word "forced", as used in the complaint, means, "obtained or imposed by coercion or physical power", which is the exact same thing that the Defendant argues to be a "fatal deficiency to the assault and battery claims." Moreover, simple assault does not involve touching. *United States v. Chestaro,* 197 F.3d 600, 606 (2nd Cir. 1999); *see also, United States v. Ramirez,* 233 F.3d 318 (5th Cir. 2000). Defendant's argument that Brown does not allege *who* escorted him during the transport, borders frivolousness as the Plaintiff clearly alleges that Defendant Miller "forced" him there, irrespective of *"who"* escorted him.

14

Finally, the Defendant argues that "Miller's alleged conduct simply does not rise to the level of "outrageousness" necessary to sustain an IIED claim." (Doc. 22 at 18). This argument lacks any conceivable merit. For one, it is the "duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme and outrageous as to permit recovery." *Wells v. Thomas*, 569 F.Supp. 426, 433 (E.D. Pa.1983) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3rd Cir. 1979)). Extreme and outrageous conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community. *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), aff'd 554 Pa. 134, 151 (1998) (citing Restatement (Second) of Torts §46, cmt. d (1965)).

There is no doubt that forcing someone into a place known to be dangerous and where they are certainly likely to be killed, if not seriously injured, cannot seriously be said not to "rise to the level of outrageousness necessary to sustain an IIED claim." Defendant Miller here forced the Plaintiff into the epic-center of a known deadly virus. This is, of course, is no different had he tossed the Plaintiff into a burning building with the sole intent and purpose of causing him serious bodily harm or death, and that is exactly what the Plaintiff alleges that Defendant Miller did here, and by doing so, he caused the Plaintiff 'severe emotional distress'.

Thus, applying the Rule 12(b)(6) standard and looking to the four corners of the complaint, Plaintiff has more plainly alleged conduct by Defendant Miller that was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Simply put, Plaintiff's IIED claim asserted against Defendant Miller survives dismissal.

### D. Conversion of the Government's Motion into Summary Judgment would be inappropriate before Brown has an opportunity to conduct discovery.

Defendant has framed its Motion under Rule 12(b)(6) of the Fed. R. Civ. Proc. incorrectly arguing that Brown has not plausibly pled causation because he does not provide the necessary facts to show that the BOP caused his exposure to COVID-19. (Doc. No. 22, at 11-14). This argument is without merit. Brown has adequately pled causation simply by alleging, inter alia, that Defendant's breach of its duty of care to him caused his injuries. (Compl, at p. 7-10). Furthermore, Plaintiff, and his "fellow inmates", as the Defendant says, obviously were not in any way privy to the outside world where the coronavirus was rampaging and he and his "fellow inmates" could have only been exposed to and contracted the coronavirus through employees introducing the coronavirus into the SCP Schuylkill facility by, inter alia, failing to follow the mandatory BOP COVID-19 Pandemic Response Plan to prevent the spread of the coronavirus into prison facilities, and then destroying records that documented staff with coronavirus type symptoms and then continuing to work even after exposure to the coronavirus; thereby causing the Plaintiff as well as his "fellow inmates", and many others, to be exposed to and infected with the coronavirus.

Moreover, to the extent the Defendant is arguably moving for Summary Judgment under Rule 56(d) of the Fed. R. Civ. Proc. on the issue of causation, however, the Motion is improper since the Plaintiff has obviously not yet had an opportunity to conduct any discovery on his claims on the issues that they present. In general, summary judgment should only be granted "after adequate time for discovery." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. For this reason, when a party lacks material facts necessary to combat a summary judgment motion, she may file an "affidavit or declaration that, for specified reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

In response, the district court may defer consideration of the summary judgment motion, deny the motion, or "issue any other appropriate order." *Id.* A Rule 56(d) motion for summary judgment must moreover be denied "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Further, such motions are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. *See, Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Furthermore, many factors counseling against granting a 56(d) motion are absent here. Non-movants must generally file an affidavit or declaration before they can succeed on a 56(d) motion, or if not, non-movants must put the district court on notice as to which specific facts are yet to be discovered. *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).

Here, discovery would plainly be necessary to establish, among other things, 1) how the record destruction of positive coronavirus staff lead to Brown's exposure to dangerous prison conditions including the coronavirus and its entry into the facility that ultimately resulted in his exposure? 2) What other deficiencies at SCP Schuylkill caused his infection of the coronavirus? 3) How staffs' continued work after testing positive for the coronavirus spread it into the facility and then exposure to Brown? 4) the names of those negligent staff members who were implicit in the destruction of records and the names of those staff members that continued working after testing positive for the virus. 5) How Defendant Miller directed staff to destroy records? When? Which staff? 6) Which CDC guidelines Defendant Miller directed staff to disregard and how this exposed the Plaintiff to COVID-19? These are plainly issues that would require discovery.

17

Similarly, non-movants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 246 (4th Cir. 2002) (noting that non-movant was entitled to 56(d) protection in part because it "was not dilatory in pursuing discovery"). Brown however has not had an opportunity to engage in any discovery to combat a summary judgment motion. Defendant's motion should thus not be converted into summary judgment until after discovery.

### E. Motion for Leave to Amend

In the unlikely event the Court finds that the Second Amended Complaint does not sufficiently plead the elements necessary to allege a claim for negligence under Pennsylvania law, or assault and battery against Defendant Miller, leave to amend the complaint should be granted to cure any deficiencies; rather than an outright dismissal. *See*, Fed. R. Civ. P. 15(a); *see also, Haines v. Kerner*, 404 U.S. 519 (1972). It should be noted that Defendant states in footnote 1 that its motion "applies equally to the claims asserted in the Plaintiff's Second Amended Complaint"; however, there are no arguments by the Defendant opposing the Plaintiff's Eighth Amendment Civil Rights Violation claim against Defendant Miller, (Sec. Am. Compl. at 13-14), and as such, that claim should be regarded as uncontested.

### CONCLUSION

For the reasons set-forth herein, the Court should summarily deny the Defendant's Motion, or alternatively, grant Brown leave to amend his complaint to cure any deficiencies in pleading.

Respectfully submitted,

September 21, 2022

Tramaine Brown
Reg. No. 91240-053
FPC Schuylkill
P.O. Box 670
Minersville, PA 17954

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 21st day of September, 2022, served a copy of the foregoing upon the below-listed party by causing it to be electronically filed with the Court on this date using the CM/ECF system or by placing a copy in the United States Mail to the following:

**MICHAEL BUTLER**
Assistant U.S. Attorney
235 N. Washington Ave., Ste. 311
P.O. Box 309
Scranton, PA 18503

Tramaine Brown

Tramaine Brown 91240053
FPC Schuylkill
P.O. Box 670
Minersville PA. 17954

RECEIVED
SCRANTON
SEP 2 6 2022
PER _____ DEPUTY CLERK

William J. Nealon Federal Bldg. + U.S. Courthouse
235 N. Washington Ave.
Scranton, PA. 18503

7021 1970 0001 1625 8608
CERTIFIED MAIL

"Legal Mail"