**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TRAMAINE BROWN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-00404** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **UNITED STATES OF** | : | |
| **AMERICA, et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant the United States of America ("United States")'s motion to dismiss for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 21.)  Also pending before the Court is <u>pro se</u> Plaintiff Tramaine Brown ("Plaintiff")'s motion to strike the United States' notice of substitution for Defendant Ryan Miller ("Miller"). (Doc. No. 26.)  For the reasons set forth below, the Court will grant in part and deny in part the parties' motions.

## I.    BACKGROUND

<u>Pro se</u> Plaintiff Tramaine Brown ("Plaintiff"), a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), is currently incarcerated at Federal Correctional Institution Schuylkill in Minersville, Pennsylvania ("FCI Schuylkill").  On March 17, 2022, he commenced the above-captioned action by filing a complaint against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, <u>et seq.</u>  (Doc. No. 1.)  Approximately one month later, on April 15, 2022, he filed an amended complaint, adding Miller, the "Executive Assistant/Camp Administrator/Public Information Officer" at FCI Schuylkill, as a defendant in this action.  (Doc. No. 6 at 2, ¶ 5.)  On that same date, Plaintiff also filed a motion for leave to

proceed <u>in</u> <u>forma</u> <u>pauperis</u> (Doc. No. 7), as well as his prisoner trust fund account statement (Doc. No. 8).

On April 21, 2022, the Court granted Plaintiff leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>, deemed his amended complaint filed, and directed the Clerk of Court to issue a summons with a copy of Plaintiff's amended complaint to the United States Marshal for service upon the United States pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure.  (Doc. No. 10.)  In addition, the Court directed the Clerk of Court to serve a copy of the amended complaint on Miller.  (<u>Id.</u>)  On May 16, 2022, the United States was served, and the summons was returned executed.  (Doc. No. 13; Doc. No. 14 (indicating that, on May 18, 2022, a copy of the summons and complaint was mailed to the United States Attorney General in Washington, D.C.).)

Following two (2) requests for an extension of time to respond to Plaintiff's complaint (Doc. Nos. 15, 17), which were granted by the Court (Doc. Nos. 16, 23), the United States filed a notice pursuant to 28 U.S.C. § 1679, stating that it was substituting itself as the proper defendant for Miller.  (Doc. No. 18.)  In its notice, the United States cites 28 U.S.C. § 2679.  (Doc. No. 18 at 1.)  This Section of Title 28 permits the Attorney General of the United States, or his or her designee, to certify that a federal employee—whose alleged negligent or wrongful act or omission gives rise to a plaintiff's claim—was acting within the scope of his or her employment.  <u>See</u> 28 U.S.C. § 2679(d); 28 C.F.R. § 15.3(a).  Upon this certification, the employee is dismissed from the action, the United States is substituted as the defendant in place of the employee, and the action is thereafter governed by the FTCA.  <u>See</u> <u>id.</u>; <u>Osborn v. Haley</u>, 549 U.S. 225, 229-30 (2007).

Plaintiff subsequently filed a motion to strike the United States' notice of substitution for Miller, as well as a supporting brief.  (Doc. Nos. 26, 27.)  Thereafter, the United States filed a

brief in opposition (Doc. No. 30), to which Plaintiff filed a reply brief (Doc. No. 31).

Additionally, after the United States filed its notice of substitution, Plaintiff filed a second

amended complaint. (Doc. No. 20.) Plaintiff's second amended complaint once again names the

United States and Miller as defendants and reasserts claims pursuant to the FTCA. (Id.)

Plaintiff's second amended complaint also asserts for the first time, however, an Eighth

Amendment claim against Miller pursuant to Bivens v. Six Unknown Named Agents of Federal

Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens").[1]  (Id.)

In response to the second amended complaint, the United States filed a motion to dismiss

for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted, as

well as a supporting brief. (Doc. Nos. 21, 22.) On September 26, 2022, Plaintiff filed a brief in

opposition to the United States' motion to dismiss. (Doc. No. 28.) The United States has not

filed a reply brief, and the time period for doing so has passed. Thus, the parties' pending

motions (Doc. Nos. 21, 26) are ripe for the Court's resolution. The Court will now turn to the

allegations set forth in Plaintiff's second amended complaint.[2]  (Doc. No. 20.)

Plaintiff alleges that, on October 15, 2020, he was placed in BOP custody and housed at

FCI Schuylkill to begin serving a federal sentence. (Id. at 6.) At that time, he "was 5 feet 8,

weighed 185 pounds with a BMI of 30, and [had] a history of being a smoker." (Id. (alleging

---

[1]  Because Plaintiff, a federal prisoner, seeks monetary damages against Miller, a federal official, the Court treats Plaintiff's second amended complaint as asserting his Eighth Amendment claim against Miller pursuant to Bivens. (Doc. No. 20 at 13-14.)

[2]  In its brief in support of its motion to dismiss for lack of jurisdiction and/or for failure to state a claim, the United States argues that the second amended complaint was filed improperly and without permission. (Doc. No. 22 at 2.) The United States further argues that, even if this Court accepts the second amended complaint as the operative pleading, its motion to dismiss applies equally to the claims asserted therein, which, the United States contends, have not changed from the amended complaint. (Id. at 2 n.1.) Because the United States, in connection with its motion to dismiss, has cited to various allegations in the second amended complaint (id. at 2-3), the Court treats Plaintiff's second amended complaint as the operative pleading in this action.

that a BMI of 30 put him in the "obese category" per the Center for Disease Control (internal quotation marks omitted).)  Plaintiff alleges that the "[e]mployees" at FCI Schuylkill knew of this and that it put him "at a high risk of severe illness or death if he were to be exposed to COIVD-19."  (Id.)

Plaintiff alleges that, in late December of 2020, there was "a massive COVID-19 outbreak" at FCI Schuylkill, which "result[ed] in at least 160 inmates testing positive for COVID-19."  (Id. (explaining that this outbreak originally started at the main camp at FCI Schuylkill and eventually made its way to the satellite camp, where Plaintiff was housed)).  Plaintiff appears to claim that, during this time, he was "forced into quarantine or transferred" into housing at the main camp, which had "a much higher security level than he should have been exposed to."  (Id.)  Plaintiff also claims that the "[e]mployees" at FCI Schuylkill "failed to take any precautionary measures to prevent or stop the spread of the virus and continued working after being exposed to the virus[.]"  (Id.)  "[A]s a result of this persistent course of action," Plaintiff asserts that he was exposed to the virus on March 2, 2021, and again on September 1, 2021. (Id.)  Notably, however, Plaintiff does not appear to claim that he ever contracted the virus during this period of time.  See (id. at 6-7).

Plaintiff alleges that he subsequently submitted an administrative claim to the BOP pursuant to the FTCA for the injuries he sustained based upon the failure of FCI Schuylkill "employees" to follow health and safety protocols that were designed to prevent the spread of COVID-19.  (Id. at 7.)  Plaintiff asserts that his administrative claim was denied and that, as a result, he brought this action against the United States seeking compensatory damages for the injuries he sustained due to the allegedly negligent acts and omissions of BOP.  (Id.; id. at 11 (alleging that he "suffered loss of sleep, headaches, severe mental pain, depression and will

continue to suffer severe and extreme emotional distress, including loss of sleep, headaches, severe mental pain, and depression . . . ")). Plaintiff claims that he has also brought this action against Miller for intentionally subjecting him to dangerous prison conditions in violation of the Eighth Amendment to the United States Constitution. (<u>Id.</u> at 7.)

In connection with all of these allegations, Plaintiff sets forth five (5) counts in his second amended complaint. (<u>Id.</u> at 7-14.) The first two counts are asserted against the United States for negligence and negligent infliction of emotional distress. (<u>Id.</u> at 7-8.) The final three counts are asserted against Miller for assault and battery, intentional infliction of emotional distress, and a violation of the Eighth Amendment. (<u>Id.</u> at 9-14.) As for relief, Plaintiff seeks compensatory damages against the United States, and compensatory, general and special damages, and punitive damages against Miller. (<u>Id.</u> at 14.) Plaintiff also makes a demand for a jury trial. (<u>Id.</u> at 15.)

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." <u>Davis v. Wells Fargo</u>, 824 F.3d 333, 346 (3d Cir. 2016). "A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff." <u>Long v. SEPTA</u>, 903 F.3d 312, 320 (3d Cir. 2018) (citation omitted). However, a court ruling on a factual attack, wherein the defendant contests the truth of the jurisdictional allegations, "is a different matter: the court need not treat the allegations as true[.]" <u>See id.</u> (citations omitted).

"In reviewing a factual attack, the court may consider evidence outside the pleadings." <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000) (citation omitted). Indeed, "[b]ecause at issue in a factual 12(b)(1) motion is the trial court's . . . very power to hear the case[,] there is substantial authority that the trial court is free to weigh the evidence and satisfy

itself as to the existence of its power to hear the case."  See Mortensen v. First Fed. Sav. & Loan

Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In other words, "no presumptive truthfulness attaches

to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims."  See id.

### B.      Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

6

not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  <u>See</u> <u>Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of <u>pro se</u> prisoner litigation, the court must be mindful that a document filed <u>pro se</u> is "to be liberally construed."  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A <u>pro se</u> complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

### III.   DISCUSSION

#### A.   Plaintiff's Motion to Strike

In his motion to strike and supporting brief, Plaintiff argues that the United States has attempted to substitute itself for Miller as to the claims in his second amended complaint on the alleged basis that Miller was acting within the scope of his employment during the time of the challenged conduct.  (Doc. No. 26; Doc. No. 27.)  Plaintiff contends, however, that Miller was not acting within the scope of his employment, as demonstrated by the intentional tort claims and the Eighth Amendment claim that Plaintiff has asserted against him in the second amended complaint.  (Id.)

In response to Plaintiff's motion to strike, the United States argues that its certification constitutes <u>prima facie</u> evidence that Miller was acting within the scope of his employment. (Doc. No. 30 at 1.)  Based upon this <u>prima facie</u> evidence, the United States contends that Plaintiff was required to create a genuine dispute of material fact as to whether Miller was acting outside the scope of his employment, but failed to do so.  (Id. at 2.)  As a result, the United States requests that the Court deny Plaintiff's motion to strike.  (Id. at 2, 3.)

The Court, having reviewed the United States' notice of substitution, the parties' respective arguments, and the governing case law on such substitutions, will grant in part and deny in part Plaintiff's motion to strike.  (Doc. No. 26.)  "The United States, 'as a sovereign, is immune from suit unless it consents to be sued.'"  <u>S.R.P. ex rel. Abunabba v. United States</u>, 676 F.3d 329, 332 (3d Cir. 2012) ("<u>Abunabba</u>") (quoting <u>Merando v. United States</u>, 517 F.3d 160, 164 (3d Cir. 2008)).  The FTCA, however, authorizes suits against the United States "for injury or loss of property, or personal injury or death caused by the <u>negligent</u> or <u>wrongful</u> act or omission of any <u>employee</u> of the Government while acting within the scope of his office or

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  See 28 U.S.C. § 1346(b)(1) (emphasis added).

Accordingly, "[t]he FTCA is a 'partial abrogation'" of the United States' sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha v. United States, 115 F.3d 176, 179 (3rd Cir. 1997)), because it authorizes suits against the United States for such negligent or wrongful acts or omissions of federal employees while acting within the scope of their employment.  See 28 U.S.C. § 1346(b)(1); Rinaldi v. United States, 904 F.3d 257, 273 (3d Cir. 2018) (explaining that "[t]he FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment" (citations omitted)).

When a federal employee is sued for a negligent or wrongful act or omission, the Federal Employee Liability Reform and Tort Compensation Act of 1988, commonly known as the Liability Reform Act or the Westfall Act, authorizes the United States Attorney General to certify that the employee "'was acting within the scope of his office or employment at the [relevant] time[.]'"  See Osborn, 549 U.S. at 240-41 (quoting 28 U.S.C. § 2679(d)(1)).  Upon the Attorney General's certification, the United States is substituted as defendant in place of the employee, and the litigation is thereafter governed by the FTCA, unless the district court determines that the employee was acting outside the scope of his employment.  See id. at 252 (citation omitted); Simmons v. Himmelreich, 578 U.S. 621, 628 (2016) (explaining that, if the Attorney General certifies that a federal employee "was acting within the scope of his employment when he committed the alleged tort, the Liability Reform Act dictates that the

United States be substituted as the sole defendant, and that the action shall proceed in the same manner as an FTCA action . . . " (citations and internal quotation marks omitted)).

Thus, by permitting this substitution, the Liability Reform Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  See Osborn, 549 U.S. at 229 (citing 28 U.S.C. § 2679(b)(1)). This is consistent with one of the underlying purposes of the FTCA, which is to "channel[ ] liability away from individual employees and toward the United States."  See Simmons, 578 U.S. at 631 (citation omitted).

Particularly relevant here, however, is the principle that, for many torts, the United States' sovereign immunity has not been abrogated under the FTCA.  See 28 U.S.C. 2680(h) ("Section 2680(h)") (explaining that the provisions of Section 1346(b) "shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . "); Levin v. United States, 568 U.S. 503, 507 (2013) (explaining that Section 2680(h) "preserves" the United States' sovereign immunity from suit on certain intentional torts and, thus, has been referred to as the "intentional tort exception" (citation and internal quotation marks omitted)).

Yet, even in such cases where the United States' sovereign immunity has not been abrogated, the Attorney General can still file a certification pursuant to 28 U.S.C. § 2679(d), and the United States can still be substituted for the employee, who, in turn, will remain immune from suit if he was acting within the scope of his employment.  See id. at 516-17 (reiterating "that § 2679(b)(1) grants all federal employees . . . immunity for acts within the scope of their employment, even when an FTCA exception . . . le[aves] the plaintiff without a remedy against

the United States" (citation omitted)); United States v. Smith, 499 U.S. 160, 165 (1991) (holding

that the Liability Reform Act "immunizes Government employees from suit even when an FTCA

exception precludes recovery against the Government" (footnote omitted)).  As stated by the

Third Circuit, this "is by design."  See Vanderklok v. United States, 868 F.3d 189, 204 (3d Cir.

2017) (citation omitted).  "'Congress recognized that the required substitution of the United

States as the defendant in tort suits filed against [federal] employees would sometimes foreclose

a tort plaintiff's recovery altogether.'"  Id. (quoting Smith, 499 U.S. at 166)).

This concept was thoughtfully considered by the United States Supreme Court in

Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995).  Specifically, the Supreme Court

explained that, "[i]n the typical case, by certifying that an employee was acting within the scope

of his employment, the Attorney General enables the tort plaintiff to maintain a claim for relief

under the FTCA, a claim against the financially reliable United States[.]"  See id. 515 U.S. at

427.  And, "[i]n such a case, the United States, by certifying, is acting against its financial

interest, exposing itself to liability as would any other employer at common law who admits that

an employee acted within the scope of his employment."  See id. (emphasis in original) (citing

Restatement (Second) of Agency § 219 (1958)).  However, "[t]he situation alters radically"

where, "in the unusual case[,]" there is "an exception to the FTCA."  See id. (footnote omitted).

In such a case, "[w]hen the United States retains immunity from suit," the "certification disarms

plaintiffs[,]" and "[t]hey may not proceed against the United States, nor may they pursue the

employee shielded by the certification."  See id. (citing Smith, 499 U.S. at 166-67).

Ultimately, the scope-of-employment certifications, such as the one before this Court, are

reviewable by the district court.  See id. at 420 (holding that these certifications are "reviewable

in court").  The Third Circuit has addressed the procedures district courts are to follow when

reviewing these certifications.  More specifically, the Third Circuit has explained that, when the United States Attorney General or United States Attorney files a certification, this "is <u>prima</u> <u>facie</u> evidence that the employee's challenged conduct occurred within the scope of [his] employment."  <u>See</u> <u>Melo v. Hafer</u>, 13 F.3d 736, 742 (3d Cir. 1994) (citation and internal quotation marks omitted)).  This certification is, however, rebuttable.  <u>See</u> <u>id.</u> at 741-42.

When a plaintiff challenges a certification, "the burden . . . shifts to the plaintiff, who <u>must</u> come forward with specific facts rebutting the certification."  <u>See</u> <u>Schrob v. Catterson</u>, 967 F.2d 929, 936 (3d Cir. 1992) (emphasis added)); <u>Brown v. Mercadante</u>, 687 F. App'x 220, 223 n.6 (3d Cir. 2017) (unpublished) (noting that a certification is <u>prima</u> <u>facie</u> evidence that the employee's conduct was within the scope of employment and, thus, a plaintiff who seeks to challenge that certification has the burden of pointing to specific facts to rebut it).  If there are genuine disputes of fact as to the scope of employment, then "a limited amount of fact finding" is appropriate which, in turn, "requires an opportunity for limited discovery, and, if necessary, an evidentiary hearing."  <u>See</u> <u>Schrob</u>, 967 F.2d at 936.  However, "[i]f the facts can be determined without an evidentiary hearing, the court can rule on a pretrial motion to substitute or to set aside the substitution based on the certification, pleadings, documentary evidence, and affidavits." <u>See</u> <u>Schrob</u>, 967 F.2d at 936; <u>Melo</u>, 13 F.3d at 742.

Here, the United States has filed the requisite certification that Miller's challenged conduct arose within the scope of his employment.  (Doc. Nos. 18, 18-1.)  Accordingly, that certification constitutes <u>prima</u> <u>facie</u> evidence that Miller's challenged conduct was within the scope of his employment.  The Court further finds, however, that Plaintiff was permitted to challenge the United States' certification since scope-of-employment certifications are subject to judicial review by the district court.  Here, Plaintiff has asserted his certification challenge by

way of a motion to strike and supporting briefs.  (Doc. Nos. 26, 27, 31.)  As a result of the

United States' certification and Plaintiff's asserted challenge thereto, the burden shifted to

Plaintiff to come forward with specific facts that would rebut the United States' prima facie

evidence that Miller's challenged conduct arose within the scope of his employment.  See

Schrob, 967 F.2d at 936.

Ultimately, the Court concludes that Plaintiff has not met his burden here.  In his motion

to strike and supporting briefs, Plaintiff argues that his second amended complaint asserts claims

for intentional torts and an Eighth Amendment violation and that, by the very nature of these

claims, he has demonstrated that Miller was not acting within the scope of his employment.

(Doc. No. 27 at 2 (averring that Plaintiff was subjected to "assault and battery" and an "unsafe

prison condition[,]" i.e., COVID-19).)

Plaintiff's assertions are, however, broad and conclusory and do not point to any specific

facts that would rebut the United States' certification.  (Id. at 1-3; Doc. No. 31 at 1-3.)  Instead,

the Court finds that Plaintiff's assertions generally rely upon his second amended complaint, as

filed on the Court's docket.  (Id.)  But, despite relying upon his second amended complaint,

Plaintiff has not cited to any specific facts set forth therein to rebut the United States' prima facie

evidence that Miller's challenged conduct arose within the scope of his employment.  (Id.)

Additionally, the Court observes that Plaintiff's second amended complaint is not verified and,

thus, his pleading is not treated as an affidavit that would provide any evidentiary support in

opposition to the United States' certification.  See, e.g., Porter v. Pennsylvania Dep't of Corr.,

974 F.3d 431, 443 (3d Cir. 2020) ("consider[ing,] as affidavits[,] [plaintiff's] sworn verified

complaints, to the extent that they [were] based upon personal knowledge and set out facts that

would be admissible in evidence" (citations omitted)).  The Court also observes that Plaintiff has

not filed an affidavit or declaration in support of his motion to strike that would point to any specific facts in his second amended complaint or otherwise set forth such facts to rebut the certification.

Thus, for all of these reasons, the Court finds that Plaintiff has failed to meet his burden in challenging the United States' certification. As a result of his failure to do so, there is no genuine dispute as to the scope of Miller's employment and, thus, no need for limited discovery to be conducted here. The United States' certification is, therefore, accepted, and the United States is permitted to substitute itself for Miller with respect to Plaintiff's tort claims for assault, battery, and intentional infliction of emotional distress.

Accordingly, the Court will deny Plaintiff's motion to strike with respect to these tort claims that have been asserted against Miller. See Osborn, 549 U.S. at 251 n.15 (noting that, "even when the plaintiff alleges an intentional tort, it may be possible to resolve the scope-of-employment question without deciding the merits of the claim"); Kimmel v. Elderton State Bank, No. 20-cv-00954, 2021 WL 462125, at *4 (W.D. Pa. Feb. 9, 2021) (concluding that the United States' certification was "unrebutted" by the plaintiff, where the plaintiff "d[id] not point out specific facts to rebut the certification, but instead argue[d] that the factual circumstances . . . contained in the [a]mended [c]omplaint sufficiently establish[ed] that the conduct at issue was outside the scope of employment, and that discovery [was] otherwise needed on the issue"); Chughtai v. Obama, 153 F. Supp. 3d 765, 773 (E.D. Pa. 2015) (substituting the United States as the proper defendant for the federal employees, where the plaintiff did not present "any evidence to rebut the certification of the United States Attorney, nor . . . called into question its validity").

However, to the extent that Plaintiff's second amended complaint seeks to assert a Bivens claim against Miller based upon an alleged violation of the Eighth Amendment, the Court

concludes that the United States is not permitted to substitute itself as the proper defendant for Miller.  Simply put, "the FTCA is <u>not</u> the exclusive remedy for torts committed by [federal] employees in the scope of their employment when an injured plaintiff brings: (1) a <u>Bivens</u> action, seeking damages for a constitutional violation by a [federal] employee; or (2) an action under a federal statute that authorizes recovery against a [federal] employee."  <u>See</u> <u>Smith</u>, 499 U.S. at 166-67 (citing 28 U.S.C. § 2679(b)(2)) (emphasis in original) (footnote omitted).

By enacting the language contained in Section 2679(b)(2) of the Liability Reform Act, and by carving out <u>Bivens</u> claims from the FTCA's exclusive remedy provision, "'Congress made clear that it was not attempting to abrogate <u>Bivens</u> and instead simply left <u>Bivens</u> where it found it[.]"  <u>See</u> <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 1822 n.7 (2022) (Sotomayor, J., concurring in part) (quoting <u>Hernandez v. Mesa</u>, 140 S.Ct. 735, 748 n.9 (2020)).  Put differently, "Congress views FTCA and <u>Bivens</u> as parallel, complementary causes of action[.]"  <u>See</u> <u>Carlson v. Green</u>, 446 U.S. 14, 20 (1980); <u>Wilkie v. Robbins</u>, 551 U.S. 537, 553 (2007) (recognizing this holding in <u>Carlson</u>).

For that reason, the United States is not permitted to substitute itself for Miller as the defendant for Plaintiff's <u>Bivens</u> claim.   As a result, Plaintiff's motion to strike will be granted to this limited extent, and Plaintiff is permitted to attempt to assert a <u>Bivens</u> claim against Miller.[3]

---

[3] While Plaintiff is permitted to attempt to assert a <u>Bivens</u> claim against Miller, as discussed <u>infra</u>, the Court ultimately finds that a <u>Bivens</u> remedy does not extend to his claim.

**B.     The United States' Motion to Dismiss**

      **1.     Rule 12(b)(1)**

The United States has filed a motion to dismiss for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 21.)  With regard to the Rule 12(b)(1) portion of its motion, the United States has moved to dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction on the basis that the FTCA's discretionary function exception applies to Plaintiff's claims and thus immunizes the Government from suit.  (Id.)  Plaintiff argues, however, that this exception does not apply here.  (Doc. No. 28-2 at 2-7.)  The Court, having reviewed the parties' respective arguments and the law governing this exception to the FTCA, is persuaded, in part, by the United States' position.

As set forth above, "[t]he United States, 'as a sovereign, is immune from suit unless it consents to be sued.'"  See Abunabba, 676 F.3d at 332 (quoting Merando, 517 F.3d at 164).  And, as also set forth above, the FTCA partially abrogates that sovereign immunity because it authorizes "suits against the United States for torts committed by 'any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred[.]'"  See id. (quoting 28 U.S.C. § 1346(b)(1)); Rinaldi, 904 F.3d at 273 (stating that the "[t]he FTCA offers a limited waiver of the federal government's sovereign immunity . . . " (citations omitted)).

The FTCA, however, "'imposes a significant limitation'" on this partial abrogation of sovereign immunity, see Abunabba, 676 F.3d at 332 (quoting Gotha, 115 F.3d at 179), by providing that the provisions of the Act shall not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a <u>discretionary function</u> or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

See <u>Abunabba</u>, 676 F.3d at 332 (emphasis added) (quoting 28 U.S.C. § 2680(a)); <u>Baer v. United States</u>, 722 F.3d 168, 172 (3d Cir. 2013) (explaining that "[t]he discretionary function exception limits [the waiver of the federal government's sovereign immunity by] eliminating jurisdiction for claims based upon the exercise of a discretionary function on the part of an employee of the government" (citing 28 U.S.C. § 2680(a)).

As explained by the Third Circuit, "[t]his discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" See <u>Abunabba</u>, 676 F.3d at 332 (quoting <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984)).  But, this discretionary function exception "does not apply to every situation in which there is an actual option to choose between courses of action or inaction[,]" but rather, "it immunizes from second-guessing legislative and administrative decisions grounded in social, economic, and political policy."  See <u>id.</u> (citation, internal citation, and internal quotation marks omitted).  And, ultimately, it is the federal government who bears the burden to show that the exception applies.  See <u>id.</u> at 333 (citing <u>Merando</u>, 517 F.3d at 164).

Before determining whether the federal government has met its burden of showing that the discretionary function exception applies to a plaintiff's FTCA claim, the Court must first identify the conduct at issue in that claim.  See <u>id.</u> at 334 (citing <u>Merando</u>, 517 F.3d at 165).  Once the Court has identified the conduct at issue, then the Court is required to conduct a two

17

(2)-part inquiry to determine whether the discretionary function exception immunizes the federal government from an FTCA suit arising out of such conduct.  See id. at 332-33.

The first part of the inquiry requires the Court to determine whether the conduct giving rise to the alleged injury and, thus, the FTCA suit, involved "an element of judgment or choice." See id. at 333 (citations and internal quotation marks omitted).  "[W]hen a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[,]" then the discretionary function exception does not apply because "the employee has no rightful option but to adhere to the directive."  See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988).  If, however, a specific course of action is not prescribed for the employee to follow, then the Court proceeds to the second part of the inquiry.  See Abunabba, 676 F.3d at 333.

The second part of the inquiry requires the Court to consider "'whether the challenged action or inaction is of the kind that the discretionary function exception was designed to shield.'"  See id. (quoting Gotha, 115 F.3d at 179) (some internal quotation marks omitted). "'[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy[,]" and thus, "'the exception protects only governmental actions and decisions based on considerations of public policy.'"  See id. (quoting Gaubert, 499 U.S. at 323).  Accordingly, "'the focus of the inquiry is not on the [employee]'s subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  See id. (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)).

Here, the Court begins, as it must, by identifying the conduct at issue.  See Abunabba, 676 F.3d at 334.  In the second amended complaint, Plaintiff sets forth various allegations upon which he seeks to impose FTCA liability against the United States.  (Doc. No. 20.)  More

specifically, Plaintiff alleges that the employees at FCI Schuylkill "failed to follow any of the basic recommendations of the CDC" (id. at 5) or take precautions to prevent or stop the spread of COVID-19 (id. at 5, 6). Instead, Plaintiff alleges, the employees at FCI Schuylkill "continued working after being exposed to the virus" (id. at 6) and "destroy[ed] records" that documented their COVID-19 symptoms (id. at 8). Additionally, Plaintiff alleges that, pursuant to 18 U.S.C. § 4042, the United States was required to "provide suitable quarters" and to "provide for the safe keeping, care and subsistence of all persons charged with or convicted of offenses against the United States." (Id. at 7 (asserting that this required the BOP "to protect Plaintiff from the exposure to dangerous prison conditions[,]" such as COVID-19).) Plaintiff further alleges that the BOP had a COVID-19 Pandemic Response Plan that the FCI Schuylkill employees failed to follow. (Id. at 8 (explaining that this "was a policy that was specifically designed to prescribe the course of action for all BOP employees" in order to prevent or mitigate against the spread of CVOID-19 at FCI Schuylkill).) And, finally, Plaintiff alleges that FCI Schuylkill employees were required to "enforce and strictly follow CDC guidelines to prevent the spread of the virus into the facility." (Id. at 7; id. at 8 (referencing "national guidelines").) In support, Plaintiff specifically cites to the "CDC Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." (Id. at 3.)

Thus, based upon these various allegations, the Court finds that the second amended complaint seeks to impose FTCA liability against the United States on the basis that Plaintiff suffered injuries when he was exposed to COVID-19 in March and September of 2021 due to the alleged negligence of FCI Schuylkill employees when they failed to follow (a) 18 U.S.C. § 4042, (b) CDC guidelines and recommendations, and (c) the COVID-19 Pandemic Response Plan. Now that the specific conduct has been identified, the Court turns to the (2)-part inquiry

discussed above in order to determine whether the discretionary function exception applies to Plaintiff's FTCA suit.

        **a.**        **Part One—Whether the Conduct Involved an Element of Judgment or Choice**

        **i.**        **18 U.S.C. § 4042**

With regard to 18 U.S.C. § 4042, the Court observes that this statute entrusts the BOP with the responsibility to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States[.]"  See 18 U.S.C. § 4042(a)(2).  Although this statute provides a general duty of care to manage and safekeep its facilities, the Third Circuit has consistently held that the BOP retains discretion with respect to how it fulfills that duty of care.  See, e.g., Rinaldi, 904 F.3d at 273-74 (concluding that 18 U.S.C. § 4042 afforded BOP discretion in deciding suitable housing assignments for inmates); Ruiz v. United States, 664 F. App'x 130, 133 (3d Cir. 2016) (unpublished) (stating that "this statute leaves the implementation of these duties to the discretion of BOP officials . . . "); Thrower v. United States, 528 F. App'x 108, 111 (3d Cir. 2013) (unpublished) (stating the same) (citations omitted); Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. 2008) (unpublished) (stating the same).

However, not only does the Court find that 18 U.S.C. § 4042 affords the BOP discretion with respect to how it will fulfill its general duty of care to manage and safekeep its facilities, but the Court also finds that this statute does not prescribe any specific course of action regarding how to prevent the spread of COVID-19 or how to mitigate against the exposure of COVID-19 among staff and prisoners within its facilities.  And, notably, neither Plaintiff's second amended complaint, nor briefing in connection with the United States' motion to dismiss, points to any specific part of this statute to establish that it imposes such an explicit duty upon the BOP.  See

Murillo v. United States Dep't of Just., No. 21-cv-00425, 2022 WL 16745333, at *7 (D. Ariz. Nov. 7, 2022) (concluding, under the first prong of a discretionary function analysis, that while 18 U.S.C. § 4042 outlines the general duty of care owed by federal prison officials toward prisoners, it "does not prescribe a specific course of conduct that leaves no room for choice or judgment[,]" and, further, "does not include any mandatory and specific directive with respect to management of the COVID-19 pandemic" (citation, internal citation, and internal quotation marks omitted)).

Accordingly, for all of these reasons, the Court finds that 18 U.S.C. § 4042 affords the BOP discretion and, further, did not prescribe a specific course of conduct for FCI Schuylkill employees to follow regarding the COVID-19 pandemic.  As such, the challenged conduct in Plaintiff's second amended complaint involved an element of judgment or choice.  Thus, the Court concludes that the United States has satisfied the first prong of the discretionary function analysis as it relates to 18 U.S.C. § 4042.

### ii.      CDC Guidelines and Recommendations

With respect to CDC guidelines and recommendations, the Court observes that, as a general matter, CDC statements concerning, inter alia, mask wearing, social distancing, and quarantining, are advisory in nature and do not prescribe any mandatory course of conduct for the BOP or FCI Schuylkill employees to follow.  See Castro v. United States, No. 21-cv-02162, 2023 WL 1804869, at *8 (M.D. Pa. Feb. 7, 2023) (accepting the defendants' argument that the CDC's guidance was not mandatory for the BOP, and recognizing that, although "[t]he CDC provided some legally binding orders and guidance with respect to COVID-19, . . . those mandatory requirements applied only to domestic public transportation and international travel" (citing Coronavirus Disease 2019 (COVID-19): CDC Orders, Centers for Disease Control &

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/laws-regulations.html);

Sanford v. United States, No. 21-cv-02552, 2022 WL 1210717, at *3 (D.S.C. Apr. 25, 2022)

(concluding that the plaintiff's FTCA claim was barred by the discretionary function exception

since the CDC's guidelines were advisory and did not mandate any particular conduct on the part

of the BOP and, thus, BOP prison officials were permitted, in their discretion, to not adopt them

as BOP policy).

Additionally, the Court also observes that, while Plaintiff generally cites to "CDC Interim

Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and

Detention Facilities" in his second amended complaint (Doc. No. 20 at 3), he has not pointed to

any specific language in this "Guidance" that would impose an explicit mandate upon the BOP.

Furthermore, Third Circuit case law offers support to the contrary.  See Hope v. Warden York

Cnty. Prison, 972 F.3d 310, 330 (3d Cir. 2020) (stating that: the CDC "[r]ecogniz[ed] challenges

inherent in the detention setting[;]" that the CDC "suggest[ed] placing detainees into cohorts

where social distancing is not practical[;] that "social-distancing strategies 'w[ould] need to be

tailored to the individual space in the facility and the needs of the population and staff[;]'" and

that "'[n]ot all strategies will be feasible in all facilities'" (quoting CDC, Interim Guidance on

Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention

Facilities)).

Therefore, the Court finds that the CDC guidelines and recommendations are

discretionary and, thus, do not prescribe a specific course of conduct for the BOP or FCI

Schuylkill employees to follow regarding the COVID-19 pandemic.  As such, the challenged

conduct in Plaintiff's second amended complaint involved an element of judgment or choice.

Thus, the Court concludes that the United States has satisfied the first prong of the discretionary function analysis as it relates to CDC guidelines and recommendations.

### iii.    COVID-19 Pandemic Response Plan

Regarding the BOP COVID-19 Pandemic Response Plan ("Response Plan" or "Plan"), the Court observes that, while the second amended complaint alleges that this Plan "was a policy that was specifically designed to prescribe the course of action for all BOP employees to follow [in order] to prevent the spread of contagious diseases such as the deadly coronavirus into prison facilities . . . " (Doc. No. 20 at 8), the second amended complaint neither provides the date on which this Plan was issued, nor sets forth any language contained in this Plan.  Moreover, this Plan has not been attached as an exhibit to the second amended complaint.

Regardless, the United States has not addressed this Plan in connection with its motion to dismiss and supporting brief and, thus, has not met its burden to show that the discretionary function exception applies as it relates to Plaintiff's allegations concerning this Plan.  See Abunabba, 676 F.3d at 333 (explaining that the federal government bears the burden to show that the discretionary function exception applies).  Additionally, the Court finds that it is not apparent based upon the allegations appearing on the face of the second amended complaint whether this Plan was discretionary or whether it was a mandatory policy that prescribed, as Plaintiff alleges, specific conduct for BOP employees to follow.

Accordingly, the Court concludes that a more developed factual record is necessary in order to determine whether the discretionary function exception applies to Plaintiff' FTCA claim that FCI Schuylkill employees had failed to adhere to the Response Plan.  Thus, the Court will deny the United States' motion to dismiss Plaintiff's FTCA claim as it relates to the Response Plan.

b.       Part Two—Public Policy

Because the Court has concluded that the conduct at issue concerning the alleged failure of FCI Schuylkill employees to follow 18 U.S.C. § 4042 and CDC guidelines and recommendations involves an element of judgment or choice, the Court must next determine whether such judgment is of the kind that the discretionary function exception was designed to protect.  In making this determination, the Court recognizes that 18 U.S.C. § 4042 and CDC guidelines and recommendations afforded FCI Schuylkill employees discretion in the development, implementation, and management of health and safety protocols concerning COVID-19.  The Court further finds that the development, implementation, and management of these protocols were grounded in public policy considerations.  See Santiago v. United States, No. 21-cv-00436, 2022 WL 790805, at *3 (W.D. Va. Mar. 14, 2022) (concluding that the BOP's handling of CVOID-19 was based on public policy considerations and explaining, among other things, that "[t]he BOP must balance its duty to protect inmates from COVID-19 with its duty to protect inmates from each other, to safeguard staff, and to protect the public"); Murillo v. United States Dep't of Just., No. 21-cv-00425, 2022 WL 16745333, at *10 (D. Ariz. Nov. 7, 2022) (concluding that BOP decisions regarding whether to implement infectious disease measures for COVID-19 were "unquestionably based on considerations of public policy" (citation and internal quotation marks omitted).  As such, the Court concludes that this is the type of judgment or choice that the discretionary function exception was designed to protect.

In reaching this conclusion, the Court upholds the long-standing principles that: "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[;]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the

legislative and executive branches of government[;]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." See Turner v. Safley, 482 U.S. 78, 84-85 (1987) (internal citation and internal quotation marks omitted)).  Deference is, therefore, appropriately afforded to BOP prison officials with respect to such decision-making in the management of COVID-19 in its institutions.  See id; Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (stating that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security" (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979))).

### c.   Conclusion

Accordingly, for all of these reasons, the Court finds that the United States has met its burden of establishing that the discretionary function exception applies to Plaintiff's FTCA claim as it relates to Plaintiff's allegations that FCI Schuylkill employees failed to follow 18 U.S.C. § 4042 and CDC guidelines and recommendations.  As such, the Court is divested of jurisdiction to consider these allegations and will dismiss Plaintiff's FTCA claim to the extent that it is based on these allegations.  However, to the extent that Plaintiff's FTCA claim relates to allegations that FCI Schuylkill employees failed to follow the Response Plan, the Court finds that the United States has not met its burden of establishing that the discretionary function exception applies here.  As such, the Court is not divested, at this time, of jurisdiction to consider allegations regarding the Response Plan.

### 2.   Rule 12(b)(6)

As discussed above, "the FTCA waives the sovereign immunity of the United States in its district courts for tort claims 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances [in which] the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  See Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)) (alteration in original).  It "'does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.'"  See id. (quoting In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001)); CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008) (explaining that "'[t]he cause of action in an FTCA claim . . . must come from state tort law" (citation omitted)).

Here, Plaintiff's second amended complaint asserts claims for negligence and negligent infliction of emotional distress against the United States.  (Doc. No. 20 at 7-9.)  Plaintiff's second amended complaint also asserts claims for assault, battery, intentional infliction of emotional distress, and an Eighth Amendment violation against Miller.  (Id. at 9-14.)  However, since the United Sates has been substituted as the proper defendant with respect to Plaintiff's state law tort claims, the Court treats Plaintiff's claims for assault, battery, and intentional infliction of emotional distress as being asserted against the United States.  The Court first addresses Plaintiff's tort claims against the United States, and then addresses Plaintiff's Eighth Amendment claim against Miller.

**a.**       **Plaintiff's Tort Claims Against the United States**

**i.**       **Negligence and Negligent Infliction of Emotional Distress**

"Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018) (citation and internal quotation marks omitted).  Under Pennsylvania law, a negligence claim "requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." See Pyeritz v. Com., 32 A.3d 687, 692 (Pa. 2011) (citation omitted).

Additionally, under Pennsylvania law, a negligent infliction of emotional distress claim is limited to the following four (4) theories of recovery: "(1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty (the special relationship rule); (2) the plaintiff suffered a physical impact (the impact rule); (3) the plaintiff was in a zone of danger and reasonably experienced a fear of immediate physical injury (the zone of danger rule); or (4) the plaintiff observed a tortious injury to a close relative (the bystander rule)." See Jordan v. Pennsylvania State Univ., 276 A.3d 751, 774 (Pa. Super. 2022) (citation and internal quotation marks omitted)); Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011) (recognizing these same four elements (citation omitted)).

In pertinent part, however, "absent a finding of negligence, [a] negligent infliction of emotional distress claim cannot survive." See Jordan, 276 A.3d at 774 (citation and internal quotation marks omitted).  In other words, a plaintiff must establish a negligence claim in order to prevail under any theory of a negligent infliction of emotional distress claim. See id.

27

Here, the United States argues that Plaintiff's second amended complaint should be dismissed under Rule 12(b)(6) for failure to state claims for negligence and negligent infliction of emotional distress upon which relief can be granted.  (Doc. No. 22 at 8-15.)  More specifically, the United States argues that the allegations in Plaintiff's second amended complaint fall short of plausibly stating a breach of a duty or causation.  (Id. at 10-15.)  Plaintiff argues, however, that his second amended complaint pleads sufficient facts to state a plausible negligence claim against the United States.  (Doc. No. 28-2 at 7-8, 10-13.)  The Court, having reviewed the parties' respective arguments, agrees with the United States that Plaintiff's claims for negligence and negligent infliction of emotional distress fail to demonstrate a plausible entitlement to relief.

As an initial matter, the Court observes that Plaintiff's second amended complaint is interspersed with broad and conclusory allegations against the United States.  See, e.g. (Doc. No. 20 at 5 (alleging that "employees" at FCI Schuylkill "failed to follow any of the basic recommendations of the CDC, or otherwise[ ] take the necessary precautions to prevent the spread of the virus . . . "); id. at 6 (alleging that "[e]mployees" at FCI Schuylkill "failed to take any precautionary measures to prevent or stop the spread of the virus and continued working after being exposed to the virus"); id. at 7 (alleging that he sustained injuries as a result of the "negligent, wrongful acts and omission of employees of the Government"); id. at 8 (alleging that "employees" at FCI Schuylkill "breached [their] duty of care by, among other things, failing to provide suitable quarters [and] safekeeping[,] . . . failing to follow national guidelines in the prevention and testing for COVID-19, and by otherwise failing to adequately protect the Plaintiff from the exposure to dangerous prison conditions including [COVID-19] . . . "); id. (alleging that "employees" at FCI Schuylkill "failed to . . . follow national guidelines in the prevention and

testing for COVID-19, and by otherwise failing to adequately protect the Plaintiff from the exposure to dangerous prison conditions including the coronavirus")).

Such broad and conclusory allegations fall well-short of stating a claim upon which relief can be granted.  In order for Plaintiff to avoid dismissal of his second amended complaint, he must "set out sufficient factual matter to show that [his] claim[s] [are] facially plausible."  See Fowler, 578 F.3d at 210 (citation and internal quotation marks omitted).  Plaintiff's allegations, however, fail to show, as a factual matter, the plausibility of his claims for negligence and negligent infliction of emotional distress against the United States.  See id. (concluding "that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" (quoting Iqbal, 556 U.S. at 678)).

That being said, the Court observes that Plaintiff's second amended complaint also contains allegations that are slightly more detailed than the allegations set forth above.  More specifically, Plaintiff's second amended complaint alleges as follows: the "[e]mployees" at FCI Schuylkill "knew" that Plaintiff's BMI of 30 and his history of being a smoker put him at high risk of illness or death if he were exposed to COVID-19 (Doc. No. 20 at 6); that he was "forced into quarantine" or "transferred" into housing, which had "a much higher security level than he should have been exposed to" (id.); that "[e]mployees" at FCI Schuylkill "continued working after being exposed to the virus" (id.); and that FCI Schuylkill "employees[,]" including Miller, "negligently or intentionally destroy[ed] records that documented employees with [COVID-19] symptoms" (id. at 8).  But even when these allegations are accepted as true and construed in the light most favorable to Plaintiff, the Court finds that they do not plausibly allege the second element of a negligence claim—i.e., breach of a duty.

This is so because the allegations relating to breach of duty are still too vague and imprecise to provide the United States with fair notice of the grounds upon which Plaintiff's claims for negligence and negligent infliction of emotional distress rest.  By way of example, these allegations do not specify: (a) what FCI Schuylkill employees were aware that Plaintiff was at a high risk of serious illness or death if he were to be exposed to COVID-19 or when those employees became aware of that fact;[4] (b) what FCI Schuylkill employees continued working after being exposed to COVID-19, and when they allegedly continued to do so; and (c) what FCI Schuylkill employees, apart from Miller, negligently or intentionally destroyed documents that reflected employees presenting COVID-19 symptoms, or when those employees allegedly destroyed such documents.  And, by way of further example, these allegations do not shed any light on Plaintiff's housing situation at FCI Schuylkill, how that housing situation constituted a dangerous condition, or when that housing situation presented such a dangerous condition. Without such specific factual allegations, the Court concludes that the second amended complaint fails to provide the United States with fair notice of how, through its employees, it is alleged to have breached a legal duty owed to Plaintiff.

Although Plaintiff argues that these types of issues "plainly . . . require discovery" (Doc. No. 28-2 at 17), the Court disagrees.  Plaintiff's second amended complaint must set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of' [a] necessary element" to his claim.  See Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (citations omitted).  Plaintiff's second amended complaint does not

---

[4]  Although Plaintiff alleges that "Miller [and] all other employees" at FCI Schuylkill knew that Plaintiff's BMI and history of smoking put him "at risk of getting severely sick" (Doc. No. 20 at 11), this allegation is unaccompanied by any facts to show the means by which all of these employees became aware of this information or when they became aware of it.

provide a basis upon which a reasonable expectation could be raised that discovery will reveal evidence to support the second element of Plaintiff's negligence claim—i.e., breach of a duty, and, likewise, evidence to support his negligent infliction of emotional distress claim.

Accordingly, for all of these reasons, the Court is persuaded by the United States' argument that Plaintiff's second amended complaint fails to plausibly allege the second element of a negligence claim—i.e., breach of a duty.  Even assuming arguendo, however, that Plaintiff's second amended complaint plausibly alleges that FCI Schuylkill employees breached a duty, the Court is further persuaded by the United States' argument that Plaintiff's second amended complaint does not plausibly allege the third element of a negligence claim—i.e., causation. (Doc. No. 22 at 11-15.)

In order to establish negligence under Pennsylvania law, a plaintiff must allege "sufficient facts to show that the defendant's negligence was both the cause-in-fact and the legal, or proximate, cause of her injuries."  See Straw v. Fair, 187 A.3d 966, 993 (Pa. Super. 2018); Flickinger's Est. v. Ritsky, 305 A.2d 40, 42-43 (Pa. 1973) (discussing the difference between factual and proximate causation in the context of a negligence claim).  "[A] negligent act is a cause-in-fact of the plaintiff's injuries "if the harmful result would not have come about but for the negligent conduct."  See Straw, 187 A.3d at 993 (citation and internal quotation marks omitted); Whitner v. Von Hintz, 263 A.2d 889, 894 (Pa. 1970) (explaining that "[t]he Pennsylvania but for formulation . . . says that there is liability if the harmful result would not have come about but for the negligent conduct").

On the other hand, a negligent act is the proximate or legal cause of the plaintiff's injuries where the act "was a substantial factor in bringing about the harm inflicted upon a plaintiff."  See Straw, 187 A.3d at 993 (citation and internal quotation marks omitted); Ford v. Jeffries, 379

A.2d 111, 114 (Pa. 1977) (explaining that the legal or proximate cause of harm involves whether the plaintiff has shown that the defendant's conduct, although a cause in the but for sense, is a substantial factor or a substantial cause, as opposed to an insignificant cause in bringing about the plaintiff's harm (citation and internal quotation marks omitted)).

Here, the Court finds that Plaintiff's second amended complaint fails to plausibly allege that FCI Schuylkill employees caused his exposure to COVID-19.  In particular, Plaintiff's second amended complaint fails to assert specific factual allegations which would show that his injuries would not have come about but for the allegedly negligent conduct of FCI Schuylkill employees.  Most glaringly, Plaintiff's second amended complaint does not: (a) identify which FCI Schuylkill employees allegedly exposed him to COVID-19; (b) how their alleged continued work after being exposed to COVID-19, or how their alleged destruction of documents, exposed him to COVID-19; or (c) how the employees' alleged failure to adhere to the Response Plan also exposed him to COVID-19.  In other words, Plaintiff has not traced his exposure to any specific, negligent act or omission to any particular individual at FCI Schuylkill, including Miller.

As appropriately argued by the United States, this renders Plaintiff's allegations, at to the causation element, wholly speculative.  (Doc. No. 22 (arguing, further, that because Plaintiff has not shown that his exposure to COVID-19 was caused by acts or omissions of FCI Schuylkill employees, it has—essentially—left the door open to other possibilities, including the possibility that Plaintiff could have innocently or negligently been exposed to COVID-19 by a fellow inmate).)  Finally, the Court would be remiss if it did not mention once more that, despite Plaintiff filing a combined FTCA and Bivens complaint against the United States and Miller, complaining of their alleged wrongdoing in the management of COVID-19 at FCI Schuylkill,

Plaintiff does not claim that he ever contracted the virus, only that he was <u>exposed</u> to the virus on two (2) separate occasions.

Accordingly, for all of these reasons, the Court concludes that Plaintiff's second amended complaint fails to state a negligence or negligent infliction of emotional distress claim upon which relief can be granted. Thus, the Court will grant the United States' motion on this basis and will dismiss without prejudice Plaintiff's claims for negligence and negligent infliction of emotional distress against the United States.

### ii.       Assault and Battery

Plaintiff's second amended complaint asserts tort claims for assault and battery against the United States. (Doc. No. 20 at 9-11.) While, as discussed above, the FTCA partially abrogates the United States' sovereign immunity, the United States retains its immunity for certain torts that are asserted against it in an FTCA suit. <u>See</u> 28 U.S.C. 2680(h) (explaining that the provisions of Section 1346(b) "shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"); <u>Levin</u>, 568 U.S. at 507 (explaining that Section 2680(h) "preserves" the United States' sovereign immunity from suit on certain intentional torts and has been referred to by the United States Supreme Court as the "intentional tort exception" (citation and internal quotation marks omitted)).

Accordingly, pursuant to this authority, the Court finds that the FTCA's waiver of the United States' sovereign immunity does not extend to Plaintiff's tort claims for assault or battery. As a result, the United States is immunized from liability for these tort claims. <u>See</u> <u>Millbrook v. United States</u>, 569 U.S. 50, 52 (2013) (explaining that the intentional tort exception "preserves" the United States' "immunity from suit for '[a]ny claim arising out of assault [or]

33

battery[,]" among other torts (quoting 28 U.S.C. § 2680(h)).  Thus, the Court will dismiss

Plaintiff's tort claims for assault and battery with prejudice as barred by the intentional tort

exception set forth in Section 2680(h).  See United States v. Shearer, 473 U.S. 52, 55 (1985)

(explaining, with respect to Section 2680(h), that "the express words of the statute bar

respondent's [FTCA] claim against the Government" (citation and internal quotation marks

omitted)).[5]

### iii.  Intentional Infliction of Emotional Distress

In addition, Plaintiff's second amended complaint asserts a tort claim for intentional

infliction of emotional distress against the United States.  (Doc. No. 20 at 9-11.)  Although the

United States retains sovereign immunity for certain torts in an FTCA suit, the tort of intentional

infliction of emotional distress is not specifically enumerated in Section 2680(h).  See 28 U.S.C.

§ 2680(h) (stating that the provisions of Section 1346(b) "shall not apply to . . . [a]ny claim

arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, misrepresentation, deceit, or interference with contract rights").

Thus, in order to determine whether Plaintiff's tort claim for intentional infliction of

emotional distress is excluded from the FTCA's waiver of sovereign immunity under Section

2680(h), the Court must consider the specific conduct upon which this claim is based.  See

---

[5]  The United States did not address Section 2680(h) in connection with their motion to dismiss.
(Doc. Nos. 21, 22.)  Instead, the United States argued that Plaintiff's pleading did not plausibly
state claims for assault or battery.  (Id.)  Because, however, Plaintiff is proceeding in forma
pauperis in this matter (Doc. No. 10), the Court has a continuing statutory obligation to conduct a
review of his pleading in order to determine if, among other things, the United States is immune
from requests for monetary relief.  See 28 U.S.C. § 1915(e)(2)(B)(iii) (directing that the "the
court shall dismiss the case at any time if the court determines that" the action "seeks monetary
relief against a defendant who is immune from such relief. . . "); see also Maurice v. Knowles-
Carter, No. 23-cv-00035, 2023 WL 2346341, at *5 (S.D.N.Y. Mar. 3, 2023) (dismissing some of
plaintiff's FTCA claims for lack of subject matter jurisdiction pursuant to Section 2680(h) and
28 U.S.C. § 1915(e)(2)(B)(iii)).

Shearer, 473 U.S. at 55 (explaining that "Respondent cannot avoid the reach of [Section] 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery[,]" and further explaining that "Section 2680(h) does not merely bar claims for assault or battery[, but that,] in sweeping language[,] it excludes any claim arising out of assault or battery").  In other words, if the conduct arises from any of the torts enumerated in Section 2680(h), then Plaintiff's tort claim for intentional infliction of emotional distress is barred by the express language of the statute.

Turning to the conduct upon which this claim is based, the Court observes that Plaintiff's second amended complaint alleges that Miller, an employee at FCI Schuylkill: (1) intentionally destroyed records that documented staff with COVID-19 symptoms; (2) failed to follow "any CDC guidelines" to prevent the spread of the virus into the facility; and (3) housed Plaintiff at the main campus at FCI Schuylkill, "the epic-center [sic]" of the virus, despite being aware that Plaintiff "was at high risk of severe illness or death if he were exposed" to the virus.  (Doc. No. 20 at 11-12.)  Based upon these allegations, Plaintiff claims that Miller's conduct "was extreme and outrageous" and "done for the sole purpose of inflicting severe emotional distress upon the Plaintiff."  (Id. at 12.)

While some of these allegations overlap with the allegations underlying Plaintiff's tort claims for assault and battery,[6] the Court nevertheless finds that these allegations do not sound in either assault or battery.  For instance, Plaintiff's tort claim for intentional infliction of emotional distress alleges no specific facts to show how Miller acted with the intent to place Plaintiff in

---

[6] For instance, with respect to Plaintiff's tort claims for assault and battery, the second amended complaint similarly alleges that Miller quarantined him at the main campus despite knowing that he was at risk and that Miller failed to take precautionary measures to prevent or stop the spread of COVID-19.  (Doc. No. 20 at 9-10.)

apprehension of imminent harmful or offensive bodily contact <u>or</u> that such bodily contact had

actually followed.  <u>See</u> <u>Sides v. Cleland</u>, 648 A.2d 793, 796 (Pa. Super. 1994) (stating that, under

Pennsylvania law, "[a]n assault occurs when an actor intends to cause an imminent apprehension

of a harmful or offensive bodily contact" (citing Restatement (Second), of Torts, § 21)); <u>C.C.H.</u>

<u>v. Phila. Phillies, Inc.</u>, 940 A.2d 336, 340 n.4 (Pa. 2008) (stating that, under Pennsylvania law,

battery involves the "harmful or offensive contact with the person of another" without that

person's consent (citation and internal quotation marks omitted)).  As a result, the Court cannot

say that the conduct underlying Plaintiff's tort claim for intentional infliction of emotional

distress is based upon or arises out of assault, battery, or any other tort that is enumerated in

Section 2680(h).  As such, Plaintiff's claim for intentional infliction of emotional distress is not

excluded by Section 2680(h).[7]

   That said, the Court now turns to the plausibility of Plaintiff's claim for intentional

infliction of emotional distress.  In its motion to dismiss and supporting brief, the United States

argues that Plaintiff's tort claim for intentional infliction of emotional distress is bereft of facial

plausibility.  (Doc. No. 22 at 17-19.)  Plaintiff, however, disagrees and argues that the second

amended complaint has plausibly stated this claim.  (Doc. No. 28-2 at 13-15.)  The Court, having

reviewed the parties' respective arguments and Pennsylvania law, agrees with the United States

that Plaintiff has not plausibly stated a claim for intentional infliction of emotional distress upon

which relief can be granted.

---

[7] While, perhaps, it is conceivable that a prisoner-plaintiff could allege circumstances in which prison officials intentionally placed the plaintiff in a situation where he was in imminent apprehension of suffering exposure to COVID-19 and had contracted the virus, there are no such allegations here.

Under Pennsylvania law, in order for Plaintiff to plausibly allege a claim for intentional infliction of emotional distress, he must allege the following four (4) elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." See Jordan, 276 A.3d at 775 (citations and internal quotation marks omitted)); Bruffett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982) (setting forth the same elements). "The conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Jordan, 276 A.3d at 775. While Pennsylvania law recognizes a claim for intentional infliction of emotional distress, courts "have allowed recovery in only very egregious cases[.]" See id. (citations omitted).

As set forth above, Plaintiff alleges that Miller intentionally "destroyed records" that documented staff with COVID-19 symptoms, failed to follow "any CDC guidelines" to prevent the spread of the virus into the facility, and housed Plaintiff at the main campus at FCI Schuylkill, "the epic-center [sic]" of the virus, despite being aware that Plaintiff "was at high risk of severe illness or death if he were exposed to the coronavirus." (Doc. No. 20 at 11-12.) Based upon these allegations, Plaintiff contends that Miller's conduct "was extreme and outrageous" and "done for the sole purpose of inflicting severe emotional distress upon the Plaintiff." (Id. at 12.) Even accepting these allegations as true and construing them in the light most favorable to Plaintiff, however, the Court concludes that the second amended complaint fails to state a claim upon which relief can be granted against the United States.

In order "[t]o survive a motion to dismiss, [Plaintiff's second amended] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). It is not enough to

claim an entitlement to relief; Plaintiff must <u>show</u> such an entitlement by way of facts in his second amended complaint.  Ultimately, the Court finds that Plaintiff's second amended complaint has not made this showing.  More specifically, the Court finds that Plaintiff's second amended complaint does not assert when Miller allegedly destroyed the records that documented staff with COVID-19 symptoms, what CDC guidelines Miller allegedly failed to follow, or how Miller's alleged destruction of the records or alleged failure to follow CDC guidelines exposed Plaintiff to COVID-19 and, thus, emotional distress.

Additionally, the Court finds that Plaintiff's second amended complaint does not set forth any details surrounding how Miller forced Plaintiff into quarantine at the main campus at FCI Schuylkill or how Plaintiff would have been less likely to face COVID-19 exposure at the satellite camp.  As a result, the Court finds that Plaintiff's second amended complaint lacks sufficient factual content upon which the Court could conclude that he has alleged all four (4) elements that are necessary to state a claim for intentional infliction of emotional distress claim.

Accordingly, for all of these reasons, the Court will grant the United States' motion to dismiss Plaintiff's tort claim for intentional infliction of emotional distress for failure to state a claim upon which relief can be granted, and this claim will be dismissed without prejudice.

**b.      Plaintiff's <u>Bivens</u> Claim Against Miller**[8]

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C.

§ 1983." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017) ("<u>Abassi</u>").  This statute "entitles an

injured person to money damages if a state official violates his or her constitutional rights." <u>See</u>

<u>id.</u>  Congress, however, "did not create an analogous statute for federal officials." <u>See id.</u>  In

other words, Congress did not provide a money damages remedy for persons whose

constitutional rights were violated by federal officials.  <u>See id.</u>

One-hundred years later in 1971, the United States Supreme Court decided <u>Bivens</u>.  <u>See</u>

<u>id.</u>  In that case, the Supreme Court held that there is an implied cause of action for money

damages when a federal official, "acting under color of his authority, conducts an unreasonable

search and seizure in violation of the Fourth Amendment." <u>See</u> <u>Shorter v. United States</u>, 12

F.4th 366, 371 (3d Cir. 2021) (citing <u>Bivens</u>, 403 U.S. at 389, 397)).  The Supreme Court

recognized that "the Fourth Amendment does not in so many words" provide for an award of

money damages as a consequence of its violation, but nevertheless explained that, "where legal

rights have been invaded, and a federal statute provides for a general right to sue for such

---

[8]  Plaintiff argues that the United States has not opposed his Eighth Amendment claim and, thus, it "should be regarded as uncontested."  (Doc. No. 28-2 at 18.)  The Court is unpersuaded by this argument.  Because Plaintiff was granted leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in this matter (Doc. No. 10), the Court has a continuing statutory obligation to conduct a review of his pleading in order to determine if, among other things, it fails to state a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that the "the court shall dismiss the case any time if the courts determines that" the action "fails to state a claim on which relief may be granted . . . ").  As noted above, because Plaintiff, a federal prisoner, seeks monetary damages against Miller, a federal official, the Court treats Plaintiff's second amended complaint as asserting his Eighth Amendment claim against Miller pursuant to <u>Bivens</u>.  (Doc. No. 20 at 13-14.)

invasion, federal courts may use any available remedy to make good the wrong done."  See Bivens, 403 U.S. at 396 (citation and internal quotation marks omitted).

In the decade following Bivens, the Supreme Court implied a cause of action for money damages pursuant to Bivens in two (2) other contexts: one under the Fifth Amendment's Due Process Clause for gender discrimination in the employment context, see Davis v. Passman, 442 U.S. 228, 248-49 (1979); and the other under the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison medical care context, see Carlson v. Green, 446 U.S. 14, 23-25 (1980).  See Bistrian v. Levi, 912 F.3d 79, 89 (3d Cir. 2018); Shorter, 12 F.4th at 371.

In 2017, however, the United States Supreme Court "made clear" in Abbasi that any further expansion of Bivens "is now a disfavored judicial activity."  See 137 S.Ct. at 1857 (citation and internal quotation marks omitted); Hernandez v. Mesa, 140 S.Ct. 735, 741 (2020) (explaining that, after the Supreme Court's decisions in Davis and Carlson, "the Court changed course"); Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand Bivens actions beyond these three specific contexts"—i.e., Bivens, Davis, and Carlson).

Thus, in order to curb any further expansion of Bivens, the Supreme Court has established a rigorous two (2)-part inquiry for courts to follow when determining whether a Bivens action should be extended to a new context.  See Bistrian, 912 F.3d at 89-90 (citing Abbassi, 137 S.Ct. at 1859-60); Shorter, 12 F.4th at 372.  More specifically, courts must first determine "whether a case presents a new Bivens context" by asking "[i]f the case is different in a meaningful way from previous Bivens cases decided by [the Supreme] Court[.]"  See Ziglar, 137 S.Ct. at 1859.  "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available."  Shorter, 12 F.4th at 372 (citation omitted).

40

If, however, a case presents a new <u>Bivens</u> context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine. <u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1857-58). "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." <u>Bistrian</u>, 912 F.3d at 90 (citing <u>Abbasi</u>, 137 S.Ct. at 1857-58). Other factors include:

> the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

<u>See</u> <u>id.</u> (quoting <u>Abbasi</u>, 137 S.Ct. at 1856-63).

More recently, however, on June 8, 2022, the Supreme Court decided <u>Egbert</u>, 142 S. Ct. 1793. In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new <u>Bivens</u> context. In particular, the Supreme Court recognized its precedents that describe the two (2)-part inquiry, but explained that these two (2) parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." <u>See</u> <u>id.</u> at 1803. The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying <u>Bivens</u> in a new context, a court may not recognize a <u>Bivens</u> remedy." <u>See</u> <u>id.</u> (citation and internal quotation marks omitted)). Thus, the outcome of <u>Egbert</u> is—essentially—that extending a <u>Bivens</u> remedy to a new context will be unavailable in all but the most unusual of cases. <u>See</u> <u>id.</u> (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no <u>Bivens</u> action may lie").

Here, Plaintiff asserts a <u>Bivens</u> claim against Miller based upon allegations that Miller violated his rights under the Eighth Amendment in connection with his prison conditions at FCI Schuylkill, which caused his exposure to COVID-19 on two (2) separate occasions.  <u>See</u> (Doc. No. 20 at 13 (alleging that "Miller imprisoned the Plaintiff under conditions that exposed him to a substantial risk of serious harm . . . "); <u>id.</u> at 14 (alleging that "Miller subjected the Plaintiff to dangerous prison conditions by deliberately exposing and forcing him into an area where [COVID-19) was mutating")).

Although the Supreme Court has recognized a <u>Bivens</u> action for inadequate medical care in violation of the Eighth Amendment, <u>see</u> <u>Carlson</u>, 446 U.S. at 23-25, the Court finds that Plaintiff's Eighth Amendment claim presents a new <u>Bivens</u> context.  <u>See, e.g.</u>, <u>Mammana v. Barben</u>, 856 F. App'x 411, 415 (3d Cir. 2021) (unpublished) (concluding that the plaintiff's Eighth Amendment claim based upon the unconstitutional conditions of his confinement presented a new <u>Bivens</u> context); <u>Walker v. United States</u>, No. 21-cv-01881, 2022 WL 1472872, at *4 (M.D. Pa. May 10, 2022) (stating that "[t]he Supreme Court has never extended <u>Bivens</u> to claims against federal prison officials regarding conditions of confinement").

Thus, because Plaintiff's Eighth Amendment claim presents a new context, the Court must determine, under <u>Abbasi</u> and <u>Egbert</u>, whether there are any special factors that counsel hesitation in expanding <u>Bivens</u> to this claim.  <u>See</u> <u>Mack</u>, 968 F.3d at 317.  Ultimately, the Court finds that there are special factors that counsel against expanding <u>Bivens</u> to this claim.  <u>See</u> <u>Egbert</u>, 142 S.Ct. at 1803 (explaining that such a factor or reason indicates that Congress is better equipped than the Judiciary to "'weigh the costs and benefits of allowing a damages action to proceed'" (quoting <u>Ziglar</u>, 137 S.Ct. at 1858)).

More specifically, the Court finds that extending a <u>Bivens</u> remedy to Plaintiff's Eighth Amendment claim "would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of [the Court's] limited constitutional power."  <u>See</u> <u>Mammana</u>, 856 F. App'x at 415.  As explained by the Third Circuit, albeit in a non-precedential opinion, neither the Supreme Court nor any circuit court has extended <u>Bivens</u> to claims against federal prison officials concerning the allegedly unconstitutional conditions of a prisoner's confinement.  <u>See</u> <u>id.</u>  "Heeding the reasoning in <u>Abbasi</u>, [the Court] must be reluctant to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation."  <u>Bistrian</u>, 912 F.3d at 95 (citation and internal quotation marks omitted); <u>Egbert</u>, 142 S. Ct. at 1800 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," <u>Bivens</u> should not be recognized in new contexts).

Additionally, the Court finds that the BOP's Administrative Remedy Program provides an alternative process for addressing Plaintiff's Eighth Amendment claim.  <u>See</u> <u>Walker</u>, 2022 WL 1472872, at *4.  This process permits prisoners, who allege unconstitutional conditions of their confinement, to file grievances in order to correct those conditions.  <u>See</u> 28 C.F.R. § 542.10 (providing that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"); <u>Egbert</u>, 142 S. Ct. at 1806 (explaining that alternative remedies for aggrieved parties "independently foreclose a <u>Bivens</u> action"); <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 69 (2001) (stating that, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability").  Thus, "when alternative methods of relief are available," as they are here, "a <u>Bivens</u> remedy usually is not."  <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1863.

As a result, the Court finds that these special factors counsel against permitting an expansion of <u>Bivens</u> to Plaintiff's Eighth Amendment conditions-of-confinement claim.  <u>See</u> <u>Mammana</u>, 856 F. App'x at 415 (declining to extend <u>Bivens</u> to the Eighth Amendment conditions-of-confinement context).  Accordingly, the Court will dismiss with prejudice Plaintiff's Eighth Amendment claim against Miller.

> **C.    Leave to Amend**

The final issue is whether Plaintiff should be granted leave to amend his second amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  <u>See</u> <u>id.</u>  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  <u>See</u> <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds, with respect to Plaintiff's FTCA claim regarding allegations that the United States failed to comply with 18 U.S.C. § 4042 and CDC guidelines and recommendations, that granting Plaintiff leave to amend his claim as to these

44

allegations would be futile because they are barred by the discretionary function exception to the FTCA. The Court also finds that granting Plaintiff leave to amend his assault and battery claims asserted against the United States would be futile, as they are barred by the intentional tort exception set forth in Section 2680(h). Finally, the Court concludes that granting Plaintiff leave to amend his Eighth Amendment claim against Miller would be futile since the Court declines to extend a <u>Bivens</u> remedy to the conditions of confinement context.

However, the Court cannot say that granting Plaintiff leave to amend his state law tort claims asserted against the United States for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the third amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint, amended complaint, second amended complaint, or any other document already filed. The third amended complaint shall set forth the claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, the Court will grant in part and deny in part the United States' motion to dismiss for lack of jurisdiction and/or failure to state a claim upon which relief can be granted. The Court will also grant in part and deny in part Plaintiff's motion to strike the United States' notice of substitution for Miller. An appropriate Order follows.